UNITED STATES, Appellee,

v.

David WRIGHT III, Senior Airman,
U.S. Air Force, Appellant.

No. 99–0318.
Crim.App. No. 32731.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 20, 1999.

Decided Aug. 31, 2000.

CRAWFORD, C.J., announced the judgment of the Court and delivered an opinion in which COX, S.J., joined. SULLIVAN and EFFRON, JJ., each filed an opinion concurring in part and in the result. GIERKE, J., filed an opinion concurring in part and dissenting in part.

For Appellant: *Major Stephen P. Kelly* (argued); *Lieutenant Colonel Jeanne M. Rueth* and *Captain Tishlyn Taylor* (on brief); *Lieutenant Colonel Ray T. Blank, Jr.*

For Appellee: *Captain James C. Fraser* (argued); *Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers,* and *Captain Mitchel Neurock,* USAFR (on brief); *Captain Steven D. Dubriske.*

Chief Judge CRAWFORD announced the judgment of the Court and delivered an opinion in which Senior Judge COX joined.

Appellant was tried by a general court-martial from March 26 to 29, 1997, at Kadena

Air Base, Japan. He was convicted in accordance with his pleas, of indecent assault on Airman First Class (A1C) P in October 1996; and contrary to his pleas, of indecent assault [1] on A1C D in April 1996; housebreaking [2] of the dormitory room of A1C P in October 1996; and assault consummated by a battery [3] on A1C D in August 1996, in violation of Articles 134, 130, and 128, Uniform Code of Military Justice, 10 USC §§ 934, 930, and 928, respectively. A panel composed of officer members sentenced him to a bad-conduct discharge, confinement for 6 months, 3 months' hard labor without confinement, and reduction to the grade of E–3. The convening authority approved the sentence except for hard labor without confinement exceeding one month. The Court of Criminal Appeals affirmed the findings and sentence. 48 MJ 896 (1998). We review the following issues:

## I

WHETHER THE MILITARY JUDGE ERRED WHEN HE ALLOWED TRIAL COUNSEL TO PRESENT TESTIMONY OF A PSYCHOLOGIST TO IMPERMISSIBLY BOLSTER THE CREDIBILITY OF A KEY GOVERNMENT WITNESS.

## II

WHETHER ALLOWING EVIDENCE OF OTHER SEXUAL MISCONDUCT TO SHOW PROPENSITY UNDER MILITARY RULE OF EVIDENCE 413 VIOLATES THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE CONSTITUTION.

We shall discuss the issues in reverse order.

### Issue II

■ The constitutionality of a statute is a question of law; therefore, the standard of review is de novo. United States v. Brown, 25 F.3d 307, 308 (6th Cir.1994). Appellant claims that Mil.R.Evid. 413 violates both the

1. As a lesser-included offense of rape.

2. He pleaded guilty to the lesser-included offense of unlawful entry.

Due Process and Equal Protection Clauses of the United States Constitution. With regard to his due process claim, appellant argues that the historical proscription against use of propensity evidence has created a "fundamental" right against admission of such evidence. As to the equal protection claim, appellant argues that the standard to be applied is strict scrutiny and that the Government is unable to show a compelling interest in its differing treatment of sexual offenders versus others who engage in criminal activity. The Government disagrees.

### FACTS

In this case the Government sought to use evidence pertaining to the indecent assault on A1C P in October 1996 as propensity evidence to prove that appellant also indecently assaulted A1C D in April 1996. Trial defense counsel conceded that evidence of the assault on A1C P would properly come in under Mil.R.Evid. 404(b) to prove intent with respect to the charge of housebreaking of A1C P's dormitory room. The defense made a motion in limine, however, to protest admission of such evidence to prove propensity and to request that the military judge "preclud[e] trial counsel and any Government witness from testifying about, mentioning or otherwise alluding to the proffered evidence."

Trial counsel asserted that the propensity evidence was admissible in order to prove the accused's intent to sexually assault A1C P after breaking into her room. Noting that the members would already know of the assault by virtue of appellant's guilty plea to that assault, trial counsel reasoned that "Rule 403 should not exclude the evidence because it's going to be in front of the members anyway, hence any prejudicial impact is going to be there, no matter what."

Trial counsel supported its admission to prove propensity under Rule 413, noting the misconduct evidence was charged, so it was not subject to Mil.R.Evid. 404(b).

3. As a lesser-included offense of indecent assault.

The military judge determined that the alleged assault against A1C P could be admitted for the purpose of demonstrating appellant's propensity to commit similar sex offenses as charged. The following findings of fact and law were made:

1. The Accused has been found guilty, pursuant to his pleas,' of unlawful entry of Airman [P]'s dormitory room on 18 October 1996 and indecent assault on Airman [P] once he was inside the room.

2. The indecent assault occurred while Airman [P] was asleep on her bed in the early morning hours at approximately 0500. The Accused committed the assault by placing his hand inside her underwear and touching her vaginal area.

3. The Accused is also charged with rape of Airman [D] on 26 April 1996, indecent assault of Airman [D] in August 1996, as well as housebreaking of Airman [P]'s room on 16 [sic] October 1996, that is, unlawfully entering her room with the intent to commit the criminal offense of indecent assault.

4. In order to prove the housebreaking offense, the facts of the indecent assault to which the accused has pleaded guilty would be entered into evidence as part of the facts and circumstances surrounding the commission of the offense to try and prove the Accused's intent.

5. With regard to the alleged rape, the proffer in Trial Counsel's brief states that Airman [D] will testify that the alleged rape occurred while she was asleep in the early morning hours. This allegedly occurred approximately six months prior to the indecent assault of Airman [P].

6. With regard to the alleged indecent assault of Airman [D], it is proffered that she will testify that the assault occurred when the Accused placed his hand on her vaginal area when she was bending over at work in the Dental Clinic. This allegedly occurred ap-proximately two months prior to the assault on Airman [P].

7. In the instant case, it is charged misconduct that the Government contends the triers of fact should be entitled to consider for its bearing on the offenses to which the Accused has pleaded not guilty.

8. The spill over instruction states that each offense must stand on its own, and the trier of fact must keep the evidence of each offense separate. In other words, proof of one offense carries with it no inference that the Accused is guilty of any other offense.

9. Subsequently, M.R.E. 413 was enacted which states that [sic] in a criminal case in which a defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible and may be considered for· its bearing on any matter which is relevant. In other words, even uncharged misconduct of another sexual assault could be admissible to show an Accused's propensity to commit the charged sexual assault.

10. The Court finds that the indecent assault committed upon Airman [P] on 18 October 1996—and I may have misspoke and said 16 October in one of my earlier findings, but I meant 18 October. The Court finds that the indecent assault committed upon Airman [P] on 18 October 1996 may be considered by the Court members, along with any other evidence properly admitted on the other charged offenses, for its bearing on the guilt or innocence of the Accused.

The Court finds that the indecent assault is a charged offense which will be admitted into evidence in order to try and prove the Specification of Charge II, that it is sufficiently similar to the alleged rape in that it occurred in the early morning hours while the victim was asleep, that it is sufficiently similar to the alleged assault on Airman [D] in that it involved an assault by touching

the vaginal area, and that the indecent assault of Airman [P] was sufficiently proximate in time to the other offenses, so therefore the probative value of considering this sexual assault for its bearing on the other offenses is not substantially outweighed by the danger of unfair prejudice.

What I will do is devise a modified spill over instruction because I still intend to advise the Court members of the spill over instruction and that, while they may consider this evidence for its possible bearing on the other offenses, they must do so with caution in view of the concern expressed in the spill over instruction.

In conclusion, the military judge asserted the constitutionality of Rule 413, recognizing other jurisdictions' allowance of admission of such evidence.

## LAW

Prior to Rule 413,[4] character evidence could be presented by means of opinion or reputation evidence. The then-Rules of Evidence specifically precluded character evidence as circumstantial proof of conduct. However, Congress approved Fed.R.Evid. 413–415 as part of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, Title XXXII, § 320935(a). Rule 413(a) reads:

In a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant.

Rule 413(d) contains a definition of "offenses of sexual assault," which includes the charges in this case.

### Congressional Record

Speaking on the House floor, Congresswoman Susan Molinari stated: "The new rules will supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b)." Contrasted to Rule 404(b)'s "general prohibition" against propensity evidence, "the new rules for sex offense cases authorize admission and consideration of evidence of an uncharged offense for its bearing 'on any matter to which it is relevant.'" *See* Fed.R.Evid. 413(a).

This includes the defendant's propensity to commit sexual assault ... and assessment of the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense. In other respects, the general standards of the rules of evidence will continue to apply, including ... the court's authority under evidence rule 403 to exclude evidence whose probative value is substantially outweighed by its prejudicial effect.... The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault ... cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule. The presumption is in favor of admission.

140 Cong. Rec. H8991 (daily ed. Aug. 21, 1994).

Thus, the legislative history shows that Rule 413 not only creates an exception to Rule 404(b)'s general prohibition against the use of a defendant's propensity to commit crimes but also it is subject to Rule 403.

While some argue that character evidence may be overestimated by jurors,[5] the new rules allow the public to accept jury verdicts and controls to some extent the legitimacy and acceptability of acquittals in criminal cases. Jack B. Weinstein, *Some Difficulties in Devising Rules for Determining Truth in Judicial Trials,* 66 Colum. L.Rev. 223, 225–27 (1966); David P. Bryden and Roger C. Park, *"Other Crimes" Evidence in Sex Offense Cases,* 78 Minn. L.Rev. 529, 543 (1994); *cf.* Charles Nesson, *The Evidence or the Event? On Judicial Proof and the Acceptability of Verdicts,* 98 Harv. L.Rev. 1357, 1368 (1985)(arguing that the need "to promote

---

**4.** Both the Federal Rule and the Military Rule are virtually the same.

**5.** This rule has resulted in a substantial amount of commentary, much of it favorable towards the Rule. Roger C. Park, David P. Leonard & Steven H. Goldberg, Evidence Law 150 n. 96 (1998).

public acceptance of verdicts" can better explain many evidentiary rules). This fear does not apply equally to the military because panel members are selected based on their "age, education, training, experience, length of service, and judicial temperament." Art. 25(d)(2), UCMJ, 10 USC § 825(d)(2).

Just as the Supreme Court has recognized, the judiciary is not a rulemaking body. The new Rules reflect a political decision that there should be a greater range of admissible evidence in criminal and civil actions involving specific sexual assault crimes. The scientific community is divided on the question of recidivism for sexual offenders. Some have found a rate of recidivism is very high for sexual offenders [6] while some have found the rate lower for rapists than for burglars, drug offenders, or robbers.[7] Even with this decision, Congress enacted the Rules. Thus, unless these Rules are unconstitutional, we are bound by the Rules.

### Constitutional Challenge

■■■ Appellant makes a facial challenge to the Rule and challenges it as applied. The presumption is that a rule of evidence is constitutional unless lack of constitutionality is clearly and unmistakably shown. *National Endowment for the Arts v. Finley*, 524 U.S. 569, 580, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) ("Facial invalidation 'is, manifestly, strong medicine' that 'has been employed by the Court sparingly and only as a last resort.'"); *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("A facial challenge to a legislative act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). Appellant must show that Rule 413 "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43–45, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (examining historical

practices on due process challenges). The question is whether "this type of evidence [Rule 413] is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352, 353, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)(evidence of acquittal admissible because the evidence was "at least circumstantially valuable in proving petitioner's guilt").

The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.* at 352, 110 S.Ct. 668. As the Court explained:

Judges are not free, in defining "due process," to impose on law enforcement officials [their] "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." *Rochin v. California*, 342 U.S. 165, 170, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952).... [They] are to determine only whether the action complained of ... violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 341, 79 L.Ed. 791 (1935), and which define "the community's sense of fair play and decency," *Rochin v. California, supra*, at 173, 72 S.Ct., at 210.

493 U.S. at 353, 110 S.Ct. 668, quoting *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). The Rule would be fundamentally unfair if it undermines the presumption of innocence and the requirement that the prosecution prove guilt beyond a reasonable doubt. *See Estelle v. McGuire*, 502 U.S. 62, 78, 112 S.Ct. 475, 116 L.Ed.2d 385 (opinion of O'Connor, J.). In rejecting a challenge to the Texas habitual criminal offenders' statute, the Court noted that "it has never been thought that [the Court's Due Process Clause] cases establish this Court as a rulemaking organ for the promulgation of state rules of criminal proce-

---

6. Joseph A. Aluise, *Evidence of Prior Sexual Misconduct in Sexual Assault and Child Molestation Proceedings: Did Congress Err in Passing Federal Rules of Evidence 413, 414, and 415?*, 14 J.L. & Pol. 153 (1998).

7. *See, e.g.*, David P. Bryden & Roger C. Park, *"Other Crimes" Evidence in Sex Offense Cases*, 78 Minn. L.Rev. 529, 572 (1994) (citing statistics from the Department of Justice).

dure." *Spencer v. Texas*, 385 U.S. 554, 564, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

As noted by the Supreme Court, we must recognize, as reinforced in *United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), that the President has the ultimate authority for the enactment of the Rules of Evidence that this Court determines satisfy the Constitution.

### Protection

■ The Federal courts examining the new rules have uniformly upheld the rules while emphasizing the importance of a Rule 403 balancing test. *United States v. Mound*, 149 F.3d 799, 800 (8th Cir.1998) ("In considering evidence offered under Rules 413, 414, and 415, a trial court must still apply Rule 403, though in such a way as 'to allow [the new rules their] intended effect.'"), *cert. denied*, 525 U.S. 1089, 119 S.Ct. 842, 142 L.Ed.2d 697 (1999); *United States v. Castillo*, 140 F.3d 874, 882 (10th Cir.1998) (the "Rule 403 balancing test applies to evidence admitted under Rule 414"); *United States v. Larson*, 112 F.3d 600, 604–05 (2d Cir. 1997)("We view Rule 403 analysis in connection with evidence offered under Rule 414 to be consistent with Congress's intent...."); *United States v. Lawrence*, 187 F.3d 638, 1999 U.S.App. LEXIS 16967 at 5 (6th Cir. 1999)("Rule 403 ... is applicable in the Rule 414 context"). But the courts of appeals do not require the trial judge to make specific findings of fact as to Rules 403 and 413. *See, e.g., Castillo*, 140 F.3d at 884 (The "district court need not make detailed factual findings in support of its Rule 403 determination. However, '[b]ecause of the sensitive nature of the balancing test in these cases, it will be particularly important for a district court to fully evaluate the proffered Rule 413 ... evidence and make a clear record of the reasoning behind its findings.'"). The Rule 403 balancing test should be applied "[i]n light of the strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible[.]" *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir.1997).

In *LeCompte*, the Court held on government appeal that it was reversible error to exclude evidence of prior acts of child molestation. The incidents were separated by 8 years and the trial judge excluded the evidence. On appeal the Court reversed, stating that "we think the District Court erred in its assessment that the probative value of [the] testimony was substantially outweighed by the danger of unfair prejudice." *Id.* at 769. The prior charged acts were substantially similar, and the lapse of time was less significant than might have appeared. As to the danger of unfair prejudice and propensity evidence, "it is precisely such holdings as that [by the District Court] that Congress intended to overrule." *Id.* at 770.

■ Before admitting evidence under Rule 413, three threshold findings are required:

1. The accused is charged with an offense of sexual assault—Mil.R.Evid. 413(a);

2. "[T]he evidence proffered is 'evidence of the defendant's commission of another offense of ... sexual assault'"; and

3. The evidence is relevant under Rules 401 and 402. *United States v. Guardia*, 135 F.3d 1326, 1328 (10th Cir.1998).

■ Additionally, the Court must apply a balancing test under Rule 403. Some of the factors to be examined when conducting a balancing test are as follows:

Strength of proof of prior act—conviction versus gossip;

probative weight of evidence;

potential for less prejudicial evidence;

distraction of factfinder; and

time needed for proof of prior conduct.

*See United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir.), *cert. denied*, 525 U.S. 887, 119 S.Ct. 202, 142 L.Ed.2d 165 (1998). Some others include:

temporal proximity;

frequency of the acts;

presence or lack of intervening circumstances; and relationship between the parties.

*See Guardia*, 135 F.3d at 1331.

Mr. David J. Karp, a drafter of the Rules, has stated: "It is not expected, however, that evidence admissible pursuant to proposed Rules 413–15 would often be excluded on the basis of Rule 403. Rather, the effect of the

new rules is to put evidence of uncharged offenses in sexual assault ... cases on the same footing as other types of evidence that are not subject to a special exclusionary rule. The presumption is in favor of admission." 70 Chicago–Kent L.Rev. 15, 19 (1994).[8] "The rule excluding uncharged misconduct is contrary to the trend in evidence law towards free proof." 78 Minn. L.Rev. at 561. Additionally, "[j]urists and scholars alike increasingly have agreed ... that technical rules of evidence designed to prevent factfinders from making mistakes are, at best, more trouble than they are worth." *Id.*; William L. Twining, Theories of Evidence: Bentham and Wigmore (1985)(describing advocacy of free proof and its current impact).

In addition to the Rule 403 balancing test, the rules also protect (1) by limiting the uncharged misconduct to serious offenses; (2) by requiring the evidence to meet the relevance requirements of Rules 401–402 and enforced through Rule 104(b); (3) by requiring the judge to conclude that the jury could find by preponderance of the evidence that the offenses occurred, *Huddleston v. United States*, 485 U.S. 681, 689–90, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); and (4) by the notice requirement in Rule 413(b) which ensures that admission of the evidence does not threaten the presumption of innocence.

## EQUAL PROTECTION

■ We next consider the challenge to Rule 413 under the Equal Protection Clause. At trial the defense only raised a due process challenge in the pleadings, but the judge did not rule on any constitutional claim. However, both the due process and the equal protection challenges were presented to the Court of Criminal Appeals. Thus, the constitutional challenge based on equal protection is properly before us. *See Taylor v. Illinois,* 484 U.S. 400, 406 n. 9, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

We conclude that the reasoning in *Mound,* 149 F.3d at 801 and *Castillo,* 140 F.3d at 883

provides ample justification for rejecting the equal protection claim and we do so now.

## DISCUSSION

This is the type of case in which this evidence was designed to be admitted. The victim was too traumatized, intimidated, and humiliated to file a complaint in the first instance. It was not until A1C P filed her complaint that A1C D followed with hers. As the Supreme Court observed in *Huddleston:* "[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts." 485 U.S. at 691, 108 S.Ct. 1496.

■ The direct evidence in this case came from the testimony of A1C D subject to examination by both sides and the members. This evidence formed the basis for the charges against the appellant. The incidents were recent and detailed. As with A1C P, A1C D was a contemporary of the appellant and worked closely together in the dental clinic. There is no question as to the identity of appellant. A1C D's failure to report and her maintaining of normal relationship with appellant until after the incident with A1C P was put in context by the testimony of Dr. Greene. Additionally, the interrelatedness of the evidence concerning A1C D and A1C P did not consume more time than otherwise needed for this trial because such evidence was needed to prove the charges.

We hold that the Rule is constitutional and that the judge did not abuse his discretion in admitting the evidence concerning A1C D.

### FACTS—Issue I

A1C D testified that she was sexually abused by her stepfather and that her mother refused to report the allegation. A1C D stated as a result of that experience she was reluctant to report sexual abuse. Normally, she dealt with abuse by pretending it really didn't happen.

---

8. Ms. Molinari said that Mr. Karp's article "provided a detailed account of the views of the legislative sponsors and the administration concerning the proposed reform, and should also be considered an authoritative part of its legislative history." 140 Cong. Rec. H8991.

Defense counsel highlighted on cross-examination that A1C D initially failed to report the sexual attack on April 26, 1996, even though she had previously reported an unrelated incident of sexual harassment. Likewise, it was brought out that A1C D enjoyed a normal interaction with appellant. Her failure to report and relationship with appellant were brought out to show that her actions were inconsistent with the alleged sexual assault.

After this cross-examination, Dr. Greene testified that the victim's reactions were "consistent" with other victims of child abuse. Because of her prior abuse, "she reported what we call 'emotional anesthesia' or an ability, a decreased emotional reactivity, decreased involvement in her emotional life." The prior abuse had an impact upon her "affective presentation." Dr. Greene explained: "Very often, when people have been exposed to traumatic events in their lives, especially children and adolescents, what you'll find is a tendency to manage or attempt to better manage their negative emotions by not dealing with them."

Dr. Greene also testified as to the impact on the victim from her mother's failure to take action. Her mother's reaction to her stepfather and the victim's allegations at that time led her to distrust other individuals. Rather than testifying about rape victims in general, Dr. Greene testified to the reactions of the victim who had been subject to child abuse. Her reaction was not necessarily common, but it "certainly [was] not unexpected."

Q. Can you describe her affect?

A. Yeah, her affect was as I described before. It was incongruent. Quite frankly, I was impressed that she was, that to be reporting something that is or should be objectively traumatic, she was able to report it with a fairly flat and neutral affect.

Q. And was there a way she should have responded to having been raped?

A. That question is actually—That's one of the big problems in the whole area of dealing with victims of rape. We have expectations about victims of rape and other sorts of traumatic events, and our expectation is almost of the, well, is of the woman being terribly devastated or the rape victim being terribly devastated by the rape. And, you know, we have all these pictures in the media of a woman huddling behind a blanket or behind a piece of furniture trying to protect herself and shivering uncontrollably. That's kind of what we expect, but we know when we deal with these people as patients that the reaction to rape is very variable. Some people show relatively minor response to having been raped, and other people are devastated to the point of requiring hospitalization.

Q. Now, how would the history of Airman [D] have affected her response and her decision not to report a rape?

A. Her history ... Now, her—One of the things that we know about her history is that she has always been, well, that she has a history of sexual abuse and attempting to report the sexual abuse to her mother, who was her primary care giver, and being, and a history of not having anything being done about that. I mean, there was nothing done; there was no consequence until she was an adult of any of the reports that she made about her sexual abuse. And so, the history and her response, well, her response and the issue of the rape is consistent with the history of someone who has not benefited from reporting, who's not had any benefit come of her telling her trusted care giver that she is being violated and she's being assaulted.

Q. Are you familiar with the term "minimization"?

A. Yes.

Q. And what does that mean?

A. Minimization is the process of either affectively or cognitively—and affect meaning, again, emotion; cognitively meaning how we think about things—of downplaying the severity of an inci-

dent so that it's better able, again, to be handled; it's better able to be coped with. And we minimize all the time, I mean, there are times that we're insulted in the context of a discussion, or things happen to us at work that are very negative, and rather than have the strong reaction that we should, we go out of our way to sort of, to put it in a box or put it in a, or think about it in a way that helps protect us and how we feel.

He also testified that A1C D

reported that this is her characteristic style, that she prefers to handle things herself. And so, rather than making big deals about things, she's very often, she reported a style that involves kind of handling, making sure that she takes care of things herself.

When asked if this was common of "victims of childhood sexual abuse," he responded that "[i]t is certainly not unexpected." When Dr. Greene was asked if sexual-abuse victims like D would tend to minimize, he testified:

The most striking example, what I saw was the affective presentation, certainly. Her decision not to report is certainly consistent with minimization as well. Her decision to take this, to not, and to keep it to herself, and to not even consider it, and to engage in all of the emotional processes required to help contain and better manage emotional response to that trauma is certainly an example of minimization.

## DISCUSSION

▮ As this Court stated in *United States v. Halford,* 50 MJ 402, 404 (1999):

Expert testimony in sexual abuse cases may take many forms. The expert may offer evidence that the characteristics demonstrated by the victim lead to a diagnosis of "rape-trauma syndrome ... [which] is probative ... on the issue of consent by the victim." *United States v. Carter,* 26 MJ 428, 429 (CMA 1988). Or, the expert may testify that certain behavioral characteristics are consistent with a "rape trauma model." *United States v. Houser,* 36 MJ 392, 394–96 (CMA), *cert.*

*denied,* 510 U.S. 864, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993); *see also United States v. Reynolds,* 29 MJ 105, 111 (CMA 1989)("[T]he plain rule of law is that an expert's testimony concerning 'rape-trauma syndrome' " is admissible); *United States v. Lee,* 28 MJ 52, 54–55 (CMA 1989)(admitted testimony to show victim suffered from post-traumatic stress disorder); *United States v. Snipes,* 18 MJ 172 (CMA 1984)(expert may testify victim's behavior is typical of abused child). However, the expert may not testify concerning the credibility of the victim or other witnesses, absent a proper foundation under Mil.R.Evid. 405.

Just as in *Halford,* the defense attacked A1C D's credibility on cross-examination relying on her failure to report and her normal interaction with appellant, to show the inconsistency of the alleged sexual assault. The prosecution, however, explained her actions through the testimony of Dr. Greene, in particular the effect of the abuse by her stepfather and her mother's refusal to report his conduct. Trial defense counsel did not question Dr. Greene's expertise or his ability to link his expertise to the specific facts of the case.

Dr. Greene was well aware of his role. When the defense tried to open the door by asking him if her responses were "consistent with the possibility that rape occurred. Isn't that what you were testifying about?," Dr. Greene responded, "I think that for me to do that [respond as indicated], I would be usurping the responsibility of the jury." The judge told counsel that Dr. Greene could not testify "about credibility" but he could "testify concerning patterns of consistency between the traits of victims and compare those with patterns in the victim's story...." When there was a possibility of inadmissible testimony, the judge stepped in to exclude inadmissible evidence. Under the circumstances of this case we hold that Dr. Greene did not impermissibly bolster the credibility of A1C D.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in part and in the result):

I would hold that Fed.R.Evid. 413, as incorporated by Mil.R.Evid. 1102, was applicable to appellant's court-martial in March of 1997 and it was constitutional. *See United States v. Enjady*, 134 F.3d 1427, 1430 (10th Cir.1998) (holding that Fed.R.Evid. 413 is facially constitutional because Fed.R.Evid. 403 balancing test applies), *citing Dowling v. United States*, 493 U.S. 342, 352–53, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *accord United States v. Castillo*, 140 F.3d 874, 881–83 (10th Cir.1998). However, I agree with Judge Gierke in his view that evidence of conduct that occurs after the charged offense but before the trial is objectionable under Mil.R.Evid. 403. *See United States v. Matthews*, 53 MJ 465 (2000) (Sullivan, J., concurring in the result).* Nevertheless, I would find no plain error here. *See* Article 59(a), UCMJ, 10 USC § 859(a).

EFFRON, Judge (concurring in part and in the result):

I agree with the principal opinion's treatment of Issue I.

Issue II, as framed by appellant, is a facial challenge to Rule 413. I agree that the constitutionality of Rule 413 may be sustained by applying "the safeguards embodied in Rule 403[.]" *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir.1998); *see also id.* (setting forth specific factors that must be considered under Rule 403 in a sexual assault case); and *United States v. Guardia*, 135 F.3d 1326, 1331 (10th Cir.1998) (although the trial court is not required to make detailed findings of fact under Rule 403, it is important that the court "fully evaluate the proffered Rule 413 evidence and make a clear record of the reasoning behind its findings").

---

* My concurrence in *Matthews*, which rested on Mil.R.Evid. 403's protection against undue prejudice, is legally distinct from other cases in which this Court has dealt with such evidence on grounds other than undue prejudice. *E.g.*, *United States v. Caniete*, 28 MJ 426, 427–28 (1989);

GIERKE, Judge (concurring in part and dissenting in part):

I agree with the majority's decision regarding Issue I. I disagree with its decision on Issue II.

At the outset, I decline to join the majority's advocacy of "free proof." 53 MJ at 483. Our charter is to interpret and apply Rule 413, not to justify the wisdom of its promulgation.

I disagree with the majority's conclusion that this case "is the type of case in which this evidence was designed to be admitted." 53 MJ at 483. I have grave doubts about the admissibility of the indecent assault on A1C P to prove the offenses against A1C D. The indecent assault on A1C P occurred on October 18, 1996, well after the offenses against A1C D. The offenses against A1C D were alleged to have occurred on April 26, 1996, 6 months *before* the indecent assault on A1C P, and during August 1996, 2 months *before* the indecent assault on A1C P.

While Rule 413 does not specifically set out a temporal requirement, legislative and scholarly commentators strongly suggest that an offense offered as evidence of propensity must precede the offense that the evidence is offered to prove. A week after the evidentiary changes were adopted, Senator Robert Dole, a co-sponsor of the changes, described them on the Senate floor as "establishing a general presumption that evidence of *past* similar offenses in sexual assault and child molestation cases is admissible at trial." 140 Cong. Rec. S.12990 (daily ed. September 20, 1994) (emphasis added); *see also* S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 616–18 (4th ed.1997), referring repeatedly to "history of similar misconduct," "past similar transgressions," "past sexual offense evidence," and "past sexual offenses." In the absence of persuasive federal authority to the contrary, I conclude that Rule 413 does not authorize

---

*United States v. Dorsey*, 38 MJ 244, 247 (1993); *United States v. Colon–Angueira*, 16 MJ 20, 25 (1983), *citing* J. Wigmore, *A Treatise on the Anglo–American System of Evidence in Trials at Common Law* § 399 (3d ed.1940).

admission of evidence of sexual offenses committed after the charged offense. Accordingly, I would hold that the evidence was not admissible as propensity evidence under Rule 413.

Turning to the issue of prejudice, I am not convinced that the error was harmless. At trial the defense conceded that the evidence of appellant's indecent assault on A1C P was admissible under Mil.R.Evid. 404(b), to prove his intent with respect to the alleged housebreaking. The defense, however, contested admission of the evidence as propensity evidence under Rule 413. After the military judge overruled the defense objections, he compounded the error by permitting trial counsel to argue propensity and instructing the members on the use of the evidence to show propensity.

The credibility of A1C D's testimony was seriously undermined at trial. The court members did not believe her testimony entirely, as evidenced by their findings. They found appellant not guilty of raping A1C D (Charge I and its specification) but guilty only of indecent assault, and not guilty of an indecent assault (specification 1 of Charge III) on A1C D, but guilty only of an assault and battery. Under these circumstances, I have "grave doubt" whether the error was harmless. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). Accordingly, I would set aside the findings of guilty of indecent assault (Charge I and its specification) and assault and battery (specification 1 of Charge III), and authorize a rehearing on those offenses and the sentence.