*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

## UNITED STATES
Appellee

**v.**

## Darrius D. UPSHAW, Hospital Corpsman Third Class
United States Navy, Appellant

**No. 20-0176**
Crim. App. No. 201600053

Argued December 1, 2020—Decided March 24, 2021

Military Judges: Mark D. Sameit and Jeffrey V. Munoz

For Appellant: *Lieutenant Clifton E. Morgan III*, JAGC, USN (argued).

For Appellee: *Lieutenant Joshua C. Fiveson,* JAGC, USN (argued); *Lieutenant Colonel Nicholas L. Gannon,* USMC, *Major Clayton L. Wiggins,* USMC, and *Brian K. Keller,* Esq. (on brief).

Judge SPARKS delivered the opinion of the Court, in which Chief Judge STUCKY and Judge OHLSON joined. Judge MAGGS filed a separate dissenting opinion, in which Senior Judge CRAWFORD joined.

———————————

Judge SPARKS delivered the opinion of the Court.

A general court-martial composed of members convicted Hospital Corpsman Third Class Darrius D. Upshaw (Appellant), contrary to his pleas, of two specifications of abusive sexual contact and one specification of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2012). Appellant was originally sentenced to a dishonorable discharge, ten years of confinement, forfeiture of all pay and allowances, and a reduction to grade E-1. The convening authority approved the adjudged sentence.

The United States Navy-Marine Corps Court of Criminal Appeals set aside the sexual assault conviction due to a violation of *United States v. Hills*, 75 M.J. 350, 354 (C.A.A.F. 2016), but determined that the two abusive sexual contact

convictions could stand. Appellant then petitioned this Court and that petition was denied without prejudice.

After arraignment and pretrial motions, the Government opted not to pursue a rehearing on the set aside charge due to the victim's unwillingness to cooperate. The sexual assault charge was dismissed. The convening authority then ordered a sentence rehearing on the remaining convictions. On rehearing, members sentenced Appellant to a dishonorable discharge, thirty-six months of confinement, and a reduction to E-l. The convening authority approved the sentence. The Navy-Marine Corps Court of Criminal Appeals affirmed the modified sentence. This Court granted review in order to consider the following issues:

> I. Was the military judge's improper propensity instruction in violation of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), harmless error beyond a reasonable doubt?

> II. Was a recused judge's substantive participation in Appellant's case after he recused himself harmless error?

After assessing the circumstances surrounding this *Hills* violation in light of our previous decisions, we conclude that the military judge's improper instruction was not harmless beyond a reasonable doubt. Given this decision, it is unnecessary for us to address Issue II.

## I. Background

The original convictions in this case stemmed from two incidents between Appellant and separate and unconnected male servicemembers, Lance Corporal KLM and Corporal KI.

### 1. KLM

Appellant and KLM met at a bar in Oceanside, California, on October 30, 2014. KLM spent the afternoon and evening drinking with Appellant and by midnight was extremely intoxicated and ready to leave. Appellant offered to drive him back to barracks. Appellant helped KLM into the front seat of his car and reclined the seat so he could sleep. At the base gate, Appellant had to shake KLM awake to show consciousness but KLM immediately fell back to sleep. The next time KLM woke up his belt buckle was still fastened but his jeans had been unzipped and Appellant was rubbing KLM's penis

while continuing to drive the car. KLM wasn't able to push away Appellant's hand so instead he curled his body toward the window and Appellant then began rubbing KLM's leg. KLM began "freaking out" and demanded Appellant stop the car. KLM crawled out of the car on his hands and knees, still severely intoxicated. He texted his roommate that "[t]his fuses [sic] trying to rape me man I need help." He then called his squad leader, sobbing, and told him that a fellow service-member had given him a ride then tried to rape him. When the squad leader responded half an hour later that he was on his way, KLM texted back "[p]lease hurry."

While waiting to be picked up, KLM vomited in the parking lot. Appellant rubbed his back and shoulders and his crotch area over his jeans. In repeated calls to his squad leader, KLM urged him " 'Just pick me up.' " When the squad leader finally arrived, KLM hugged him, crying and thanking him for picking him up. Appellant told the squad leader that KLM had " 'the strongest case of survivor syndrome that I've ever seen to that extent,' " though KLM had no combat history or known history of post-traumatic stress disorder.

### 2. KI

On March 1, 2015, Appellant met KI and one of his buddies drinking at the same bar where he met KLM. KI had been drinking since breakfast. Mid-afternoon, Appellant offered to let KI and his friend sleep it off at his place. KI's memories of the evening were hazy due to the amount of alcohol he had consumed. He recalled a car ride, going upstairs to Appellant's apartment, and accepting a red drink from Appellant. The next thing he remembered was waking up in the dark to something inside his anus. He fell back asleep and when he woke again he was naked. He dressed and woke his buddy, crying hysterically and saying he had been raped and they needed to leave. KI continued crying as a friend arrived to pick him up.

KI told his friend what had happened and they reported the incident. KI went to the hospital for a sexual assault forensic exam. The forensic evidence revealed Appellant's DNA around KI's anus, on his genitals, in his mouth, and on his chest. He also had abrasions in the anal area. His blood alcohol level at the time of the incident was estimated to be .26.

### 3. Original Court-Martial

At trial, the Government filed a motion to admit evidence of both incidents under Military Rule of Evidence (M.R.E.) 413. Over defense objection, the military judge allowed the M.R.E. 413 material to come in as propensity evidence and instructed the members accordingly. Appellant was convicted of touching KLM's groin and touching KLM's penis when he was unable to consent due to impairment by alcohol and of penetrating KI's anus when he was unable to consent due to impairment by alcohol.

As explained by the Navy-Marine Corps Court of Criminal Appeals during their second Article 66, UCMJ, 10 U.S.C. § 866, review:

> Between Appellant's initial trial and his first appeal, the Court of Appeals for the Armed Forces (CAAF) issued its decision in *United States v. Hills*, holding the use of charged offenses as propensity evidence under Military Rule of Evidence (Mil. R. Evid.) 413 undermines an accused's right to the presumption of innocence and the corresponding propensity instruction is constitutional error. This Court applied that ruling to Appellant's case, upheld his conviction of the offenses against Victim 1 [KLM], set aside his conviction of the offenses against Victim 2 [KI], set aside the sentence, remanded the case to the convening authority (CA), and authorized a rehearing. Because Victim 2 subsequently decided not to participate in the rehearing, the CA dismissed the charges pertaining to him and ordered a sentencing rehearing for the convictions involving Victim 1.

*United States v. Upshaw*, 79 M.J. 728, 731 (N-M. Ct. Crim. App. 2019) (citations omitted).

### 4. Rehearing

The military judge initially assigned to the rehearing, Judge Sameit, was the same judge who had conducted the previous court-martial and delivered the erroneous *Hills* instruction. During arraignment, defense counsel challenged Judge Sameit to recuse himself. Judge Sameit did not rule on the recusal motion but said that he would do so if he remained on the case after consulting with the detailing judge. Judge Sameit was then replaced with a new judge, Judge Munoz. During pretrial motions, Judge Munoz disclosed that he had

consulted with Judge Sameit about trial counsel's request to admit the incidents between Appellant and KLM as M.R.E. 413 evidence.

Defense counsel then filed a motion requesting that Judge Munoz recuse himself. Judge Munoz denied the motion. Given KI's subsequent decision not to participate in another court-martial, Judge Munoz presided instead over a sentencing rehearing before members for the remaining convictions.

## II. Analysis

M.R.E. 413 addresses the admission of evidence of similar crimes in sexual assault cases and states in relevant part that: "[i]n a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant." M.R.E. 413(a)(2012).[1] It provides an exception to M.R.E. 404(b) and the general concept that prior convictions or uncharged misconduct are not admissible to show an accused's propensity towards bad acts or bad character. The constitutionality of permitting admission of such propensity evidence was upheld by this Court in *United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000).

In *Hills*, this Court determined that the government could not use charged sexual misconduct to prove propensity to commit other charged sexual misconduct under M.R.E. 413. 75 M.J. at 352. We held that "[n]either the text of M.R.E. 413 nor the legislative history of its federal counterpart suggests that the rule was intended to permit the government to show propensity by relying on the very acts the government needs to prove beyond a reasonable doubt in the same case." *Id.* The *Hills* decision also highlighted the problematic nature of instructions that provided members with "directly contradictory statements about the bearing that one charged offense could have on another, one of which requires the members to

---

[1] The language of M.R.E. 413(a) that appears in the 2016 edition of the *Manual for Courts-Martial* was changed to read, "In a court-martial proceeding for a sexual offense, the military judge may admit evidence that the accused committed any other sexual offense. The evidence may be considered on any matter to which it is relevant."

discard the accused's presumption of innocence, and with two different burdens of proof—preponderance of the evidence and beyond a reasonable doubt." *Id.* at 357.

A military judge's decision to admit evidence is reviewed for an abuse of discretion. *Id.* at 354. Neither party challenges the fact that Judge Sameit abused his discretion in delivering the M.R.E. 413 propensity instruction. The only question before this Court is to what extent that error prejudiced Appellant.

Where there is instructional error with constitutional dimensions, we test for prejudice under the standard of harmless beyond a reasonable doubt. *Id.* at 357. This standard is met "where a court is confident that there was no reasonable possibility that the error might have contributed to the conviction." *United States v. Prasad*, 80 M.J. 23, 29 (C.A.A.F. 2020) (internal quotation marks omitted) (quoting *United States v. Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F. 2019)). However, prejudice occurs where a court "cannot be certain that the erroneous propensity instruction did not taint the proceedings or otherwise contribute to the defendant's conviction or sentence." *Id.* (internal quotation marks omitted) (quoting *United States v. Williams*, 77 M.J. 459, 464 (C.A.A.F. 2018)). If it is just "certainly possible" that the accused was convicted based on properly admitted evidence alone, a *Hills* error cannot be determined harmless. *Id.* at 30 (internal quotation marks omitted) (citation omitted). However, there may be circumstances "where the evidence is overwhelming, so we can rest assured that an erroneous propensity instruction did not contribute to the verdict by tipp[ing] the balance in the members' ultimate determination." *United States v. Guardado,* 77 M.J. 90, 94 (C.A.A.F. 2017) (alteration in original) (internal quotation marks omitted) (quoting *Hills*, 75 M.J. at 378).

Since *Hills*, this Court has attempted to carve a path through the question of prejudice by determining just how much evidence is enough to tip that balance. In *Guardado*, we concluded that the appellant had been prejudiced by the *Hills* instruction because, despite the young victim's credible testimony, there was no supporting evidence. *Id.* In *Prasad*, where

evidence consisted of victim testimony and a series of Snapchat messages in which the appellant apologized and admitted he had done something wrong, we found prejudice due to the lack of physical or forensic evidence or witnesses who could support the victim's version of events, as well as her well-developed motive to fabricate such an allegation. *Prasad*, 80 M.J. at 30–32. We also found prejudice in *United States v. Hukill*, 76 M.J. 219, 220 (C.A.A.F. 2017), a military judge-alone case in which the appellant was accused of assaulting two women who were friends of his fiancée's. Evidence consisted of the testimony of the two women and his fiancée's assertion that when confronted about the first assault he told her that he did it. *Id.* at 223. In addition, we concluded that the appellant had been prejudiced in *Tovarchavez* where evidence included the victim's testimony, a series of text messages in which the appellant apologized to the victim for "crossing the line," and DNA evidence indicating sexual activity between the victim and the appellant (which was consistent with the defense theories that the sex had been consensual or that there had been a mistake of fact as to consent). 78 M.J. at 462, 468–69.

However, in *Williams*, we found prejudice for all the convictions for which there was no supporting evidence but no prejudice when the victim's account of being sodomized was backed up by damage to a door in the apartment where the assault took place, medical confirmation of the victim's (nonsexual) injuries, and witness confirmation of her upset demeanor. 77 M.J. at 464. In a summary disposition for *United States v. Hazelbower*, we determined the *Hills* instruction was harmless beyond a reasonable doubt because "the victims' accounts were corroborated by a wealth of independent supporting evidence, including (but not limited to) admissions of rape, incriminating text and Skype messages, and the exchange of nude photographs." 78 M.J. 12 (C.A.A.F. 2018).

We also consider the military judge's instructions. Where a military judge's instruction "explicitly refer[s] to the preponderance of the evidence standard, this Court cannot deny that the military judge's muddled . . . instructions potentially implicated fundamental conceptions of justice under the Due Process Clause and heightened the risk that the members would apply an impermissibly low standard of proof." *Prasad*,

80 M.J. at 30 (alterations in original) (internal quotation marks omitted) (quoting *Williams*, 77 M.J. at 463–64). Here, as in *Hills*, the military judge's instructions were clearly erroneous, including explicit reference to the preponderance of the evidence standard.

In addition, we look at the degree to which the Government relied upon the propensity evidence and the instruction on the preponderance of the evidence standard. *Id.* at 33. Here, the Government relied heavily upon the similarities between the cases, repeatedly highlighting the propensity evidence. The Government mentioned the similar circumstances surrounding both incidents in its opening argument. During closing arguments and rebuttal, the Government discussed multiple times that the members could and should consider the propensity evidence and also referenced the preponderance standard. The Government reminded members that:

> The military judge instructed you about propensity, members, and that's what makes this trial unique. These cases are connected and they are connected only by the accused's involvement.
>
> What did he tell you? He said that if you find that an offense occurred, whether that be grabbing the penis, rubbing the thigh and the groin, or penetrating the anus, you may use that on any other point to which it is relevant if you find that [the] initial charge was just by a preponderance of the evidence.
>
> So if you find that by a preponderance of the evidence the accused grabbed K.L.M.'s penis, Specification 2 of Charge I, simply by a preponderance of the evidence, you may use that—you may even use that to find that he has a predisposition to engage in sexual assault. So if you find that any one of these things happened by a preponderance of the evidence, you can use that to find that he is the type of person that does these things.

As in *Prasad,* the Government "exploited—to the considerable detriment of Appellant—the confusion surrounding the military judge's preponderance of the evidence instructions, as well as the negative inference to be drawn from the putative propensity evidence." 80 M.J. at 33.

We are not convinced that, under these circumstances, the evidence against Appellant reaches the level of overwhelming. Unlike in *Williams*, there is no physical evidence to support KLM's version of events. Granted, the additional evidence—the text messages and calls sent by KLM during his interaction with Appellant—makes this considerably more than just a he said/he said situation. But this additional evidence plays a similar role to the text messages and DNA evidence we considered in *Tovarchavez* or the Snapchat messages in *Prasad*. It is enough to make the alleged assault "certainly possible," but it is not overwhelming. *Prasad,* 80 M.J. at 30 (internal quotation marks omitted) (citation omitted). Given this lack of overwhelming evidence and the central role the propensity evidence played in the Government's case, we cannot be certain that the members' ultimate determination of guilt was not affected. We therefore cannot conclude that the military judge's error was harmless beyond a reasonable doubt.

Given our resolution of Issue I, we need not address Issue II.

### III. Conclusion

The military judge erred in admitting charged conduct as M.R.E. 413 propensity evidence and the Government has failed to meet its burden to show that error was harmless beyond a reasonable doubt. The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The remaining findings of guilt and the sentence are set aside. The record is returned to the Judge Advocate General of the Navy for appropriate action.

Judge MAGGS, with whom Senior Judge CRAWFORD joins, dissenting.

I would affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA). *United States v. Upshaw*, 79 M.J. 728, 736 (N-M. Ct. Crim. App. 2019). In my view, the NMCCA correctly determined that the instructional error in this case was harmless beyond a reasonable doubt with respect to the specification of abusive sexual contact of which Appellant was found guilty. I also agree with the NMCCA's conclusion that the first military judge's substantive participation in Appellant's case after he recused himself was harmless error. I therefore respectfully dissent.

## I. Propensity Instruction

The first assigned issue is whether "the military judge's improper propensity instruction, in violation of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), [was] harmless error beyond a reasonable doubt." *United States v. Upshaw*, 80 M.J. 179 (C.A.A.F. 2020) (order granting review). Unlike the Court, I would answer this question in the affirmative.

### A. Error and Standard of Review

In *Hills*, the accused was charged with several offenses alleging sexual misconduct. 75 M.J. at 352. The military judge granted the government's request for an instruction based on Military Rule of Evidence (M.R.E.) 413. *Id.* at 356. M.R.E. 413 at the time provided that "evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant." M.R.E. 413(a) (2012). The military judge instructed the members that if they found by a preponderance of the evidence that the accused had committed one of the charged offenses—even if they were not convinced beyond a reasonable doubt that the accused had committed that charged offense—they could consider the evidence of that charged offense for its tendency to show that the accused committed the other charged offenses. *Hills*, 75 M.J. at 353.

On appeal, this Court ruled that the instruction violated M.R.E. 413 because "[n]either the text of M.R.E. 413 nor the legislative history of its federal counterpart suggests that the

rule was intended to permit the government to show propensity by relying on the very acts the government needs to prove beyond a reasonable doubt in the same case." *Id.* at 352. This Court also ruled that the instruction violated the constitutional requirement of due process "by creating [a] risk that the members would apply an impermissibly low standard of proof, undermining both 'the presumption of innocence and the requirement that the prosecution prove guilt beyond a reasonable doubt.'" *Id.* at 357 (quoting *United States v. Wright*, 53 M.J. 476, 481 (C.A.A.F. 2000)).

The instructions in this case are indistinguishable from the instructions in *Hills*. Because the error in *Hills* has a constitutional dimension, this Court may not affirm the finding of guilt unless we find the error to be harmless beyond a reasonable doubt. *Id.* This exacting standard is met "where a court is confident that there was no *reasonable* possibility that the error might have contributed to the conviction." *United States v. Prasad*, 80 M.J. 23, 29 (C.A.A.F. 2020) (emphasis added) (citation omitted) (internal quotation marks omitted). As explained in *United States v. Guardado,* "[t]here are circumstances where the evidence is overwhelming, so we can rest assured that an erroneous propensity instruction did not contribute to the verdict by 'tipp[ing] the balance in the members' ultimate determination.'" 77 M.J. 90, 94 (C.A.A.F. 2017) (second alteration in original) (quoting *Hills*, 75 M.J. at 358).

In *United States v. Williams*, 77 M.J. 459, 464 (C.A.A.F. 2018), we concluded that a *Hills* instructional error was harmless beyond a reasonable doubt with respect to a specification for forcible sodomy. We reasoned:

> With respect to the night [the victim] ended up in the hospital, the Government introduced photographs of the door Appellant kicked in on [the victim]'s head as well as photographs of [the victim]'s wounds. A neighbor and a police officer bore witness to her distraught demeanor and injuries. Moreover, Appellant issued a sworn statement that, though silent on the issue of sodomy, largely confirmed and supported [the victim]'s story. With the benefit of this corroborating evidence, we are confident that Appellant committed sodomy with [the victim] by force and without her consent that evening.

*Id.*

## B. Harmlessness

The evidence in this case, like the evidence in *Williams*, establishes that the instructional error was harmless beyond a reasonable doubt. As the Court recounts, the named victim, Lance Corporal KLM, provided extensive and detailed testimony establishing the elements of the abusive sexual contact offense. This testimony did not stand alone. Lance Corporal KLM's allegation that a distressing incident occurred during the car ride back to his barracks was corroborated by the undisputed fact that Appellant stopped his car along a busy road. And Lance Corporal KLM's allegation that the incident involved abusive sexual contact was corroborated by Lance Corporal KLM's consistent and contemporaneous telephone calls and texts. As the NMCCA recounted:

> [Lance Corporal KLM] texted his roommate at 0055: "This fuses [sic] trying to rape me man I need help." At 0058, [Lance Corporal] K.L.M. called his squad leader. According to his squad leader, a sobbing [Lance Corporal] K.L.M. told him he accepted a ride home from a corpsman and woke up in the vehicle to the corpsman trying to rape him. When the squad leader next texted at 0124 that he was on his way to help, [Lance Corporal] K.L.M. replied, "[p]lease hurry."

*United States v. Upshaw*, No. NMCCA 201600053, 2017 CCA LEXIS 363, at *13, 2017 WL 2361911, at *5 (N-M. Ct. Crim. App. May 31, 2017) (second and sixth alterations in original) (footnotes omitted). These communications indicate not only that Lance Corporal KLM was distressed, vulnerable, and in need of help, but also that the cause was a recent sexual assault implicating Appellant. Lance Corporal KLM's decision to involve his squad leader further confirms the seriousness of the incident. In addition, as the NMCCA also found, although Lance Corporal KLM was intoxicated, any suggestion that his intoxication confused his perception and memory about the abusive sexual contact was dispelled by his accurate and detailed recollection of numerous other aspects of the evening's events. 79 M.J. at 732.

Indeed, Appellant himself provided support for Lance Corporal KLM's testimony. Appellant's account of the evening's

events largely corroborated Lance Corporal KLM's recollection of details other than the sexual assault itself. *See Williams*, 77 M.J. at 464 ("Appellant issued a sworn statement that, though silent on the issue of sodomy, largely confirmed and supported [the victim's] story."). And Appellant's contemporaneous statements in which he attempted to explain that Lance Corporal KLM was upset because he was suffering from "survivor syndrome" were baseless and unbelievable. Consequently, as the NMCCA correctly found, they served only to show Appellant's consciousness of his own guilt and a desire to avoid the consequences of the truth. *See Upshaw*, 79 M.J. at 732.

Appellant argues that this case is distinguishable from *Williams* because the victim's testimony in *Williams* was corroborated by "conclusive physical evidence," namely, the victim's wounds and a broken door, while Lance Corporal KLM's testimony in this case is not supported by physical evidence. Appellant also asserts that this case did not involve eyewitness testimony and observes that this Court noted the absence of eyewitness testimony in *Hills*, 75 M.J. at 358. These arguments are both legally and factually unfounded. First, while physical evidence and eyewitness testimony may help to establish that an error was harmless beyond a reasonable doubt, neither *Williams,* nor *Hill*s, nor any other decision requires such evidence. Any type of evidence may suffice provided that this Court "rest[s] assured that an erroneous propensity instruction did not contribute to the verdict." *Guardado*, 77 M.J. at 94. Second, this case did involve corroborating physical evidence and eyewitness testimony. The trial was not merely a "he said/he said" contest of competing statements by Lance Corporal KLM and Appellant. The presence of the car at a location consistent with Lance Corporal KLM's testimony and consistent with his texts is corroborating physical evidence. And the unit members' observations of Appellant and Lance Corporal KLM and their demeanors immediately after the incident is corroborating eyewitness testimony.

Appellant also argues that the erroneous propensity instruction was not harmless beyond a reasonable doubt because trial counsel emphasized the similarities between two

specifications of abusive sexual contact and urged the members to consider Appellant's propensity to commit them. Because of the corroborating evidence described above, I am convinced that these arguments did not affect the findings. In addition, Appellant's focus on the Government's arguments about propensity blurs the reasoning of *Hills*. Consideration of propensity evidence is not, by itself, a constitutional violation. On the contrary, this Court has held that M.R.E. 413 allows a court-martial to consider evidence of an *uncharged* sexual assault offense as propensity evidence relevant to a *charged* sexual assault offense. *Wright*, 53 M.J. at 480 (upholding the constitutionality of M.R.E. 413). The constitutional error under *Hills* arises from the risk of confusion about the presumption of innocence and burden of proof if a court-martial may draw conclusions about propensity based on a preponderance of the evidence that the accused committed a *charged* offense. *Hills*, 75 M.J. at 357. Here, as in *Williams*, the strength of the Government's case eliminates concern that this risk harmed Appellant.

## II. Recusal

The second assigned issue is whether "a recused judge's substantive participation in Appellant's case after he recused himself [was] harmless error." *Upshaw*, 80 M.J. 179. The Court does not reach this second assigned issue. I would answer it in the negative.

As the Court recounts, when the case was remanded, Judge Sameit recused himself and Judge Munoz took his place. Judge Munoz disclosed to the parties that he had consulted with Judge Sameit about trial counsel's request to allow evidence about the incident involving Lance Corporal KLM to be used under M.R.E. 413 on another specification concerning Corporal KI. Trial defense counsel asked Judge Munoz to recuse himself based on this communication with Judge Sameit, but Judge Munoz denied the motion. On appeal, the NMCCA held that Judge Munoz should have recused himself but concluded that the error was not prejudicial.

The parties dispute some aspects of the standard of review applicable to recusal errors. The Government relies on Article 59(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C.

5

§ 859(a) (2012), which provides that "[a] finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." The Government contends that if we do not find material prejudice to Appellant, the error is harmless, and any contrary decisions are incorrect. The Government further contends that Appellant cannot show individual prejudice in this case.

Appellant, however, contends that in assessing the harmlessness of a recusal error we must also consider three of the factors identified in *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988). These factors are "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Id.* at 864; *see also United States v. Witt*, 75 M.J. 380, 384 (C.A.A.F. 2016) (applying these factors in addition to Article 59(a), UCMJ). Appellant contends that the third *Liljeberg* factor is determinative because Judge Sameit's consultation with Judge Munoz on a substantive motion, after Judge Sameit's recusal, created a significant risk of undermining the public's confidence in the judicial process.

Although the Government makes a strong argument that any test for prejudice that requires us to consider factors other than the "substantial rights of the accused" is inconsistent with Article 59(a), UCMJ, resolution of the parties' disagreement about the standard of review is not necessary in this case. I agree with the NMCCA's conclusion that Appellant cannot show prejudice under the *Liljeberg* factors. The first and second factors are not substantially at issue. And with respect to the third factor, I agree with the following reasoning of the NMCCA:

> Judge Munoz's ruling occurred while charges were still pending rehearing regarding [Corporal KI]. After [Corporal KI] decided not to participate in the rehearing, the [convening authority] withdrew the charges pertaining to him and ordered a resentencing hearing only for the remaining findings of guilty regarding [Lance Corporal KLM], as affirmed by this Court. That mooted the Mil. R. Evid. 413 propensity evidence issue giving rise to the challenge against both Judge Munoz and Judge Sameit, and Appellant

then opted for members to determine his sentence. Finally, Judge Munoz issued limited rulings and sentencing instructions in connection with the sentencing proceedings, and no other allegations of error or bias are raised. Accordingly, we conclude that reasonable public observers, when taking into account the entirety of these court-martial proceedings, would have full confidence in the military judicial process.

*Upshaw*, 79 M.J. at 736 (citation omitted).

### III. Conclusion

For these reasons, I would affirm the NMCCA's decision.