# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39537**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Joseph L. NEIS**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 27 February 2020

———————————

*Military Judge:* Ryan A. Hendricks; L. Martin Powell (sentence rehearing).

*Approved sentence:* Dishonorable discharge, confinement for 5 years, and reduction to E-3. Sentence adjudged 26 April 2018 by GCM convened at Joint Base Langley-Eustis, Virginia.

*For Appellant:* Major Rodrigo M. Caruço, USAF; Major Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Brian C. Mason, USAF; Captain Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Chief Judge J. JOHNSON delivered the opinion of the court, in which Judge POSCH and Judge KEY joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

J. JOHNSON, Chief Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of rape and one specification of abusive sexual contact, both in violation of Article 120, UCMJ, 10 U.S.C. § 920.[1,2] The court-martial sentenced Appellant to a dishonorable discharge, confinement for seven years, and reduction to the grade of E-3. The military judge granted in part a post-trial defense motion for a new trial, vacating the conviction for abusive sexual contact and the sentence. The convening authority subsequently dismissed the specification of abusive sexual contact. At a sentencing rehearing on the remaining conviction for rape, a different officer and enlisted panel sentenced Appellant to a dishonorable discharge, confinement for five years, and reduction to the grade of E-1. The convening authority approved a reduction only to the grade of E-3, as well as the dishonorable discharge and confinement for five years.

Appellant has raised 12 issues on appeal: (1) whether the military judge erred by denying a defense motion to exclude evidence offered pursuant to Mil. R. Evid. 413; (2) whether the military judge erred by failing to grant a new trial as to both specifications of which he was originally convicted; (3) whether, in light of *United States v. Mangahas*, 77 M.J. 220, 222 (C.A.A.F. 2018), jurisdiction existed to prosecute the rape specification for which Appellant was convicted; (4) whether the military judge erred in admitting certain witness testimony in light of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), and *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017); (5) whether the charge and specification of which Appellant was convicted were improperly preferred; (6) whether investigators violated Appellant's Fourth Amendment[3] rights when they searched his home and vehicle; (7) whether the victim's alleged perjury violated Appellant's right to a fair trial; (8) whether Appellant's trial defense counsel were ineffective for failing to challenge the charged specifications as multiplicious or to seek separate trials for each alleged offense; (9) whether

---

[1] The rape conviction was based on the version of Article 120, UCMJ, in effect in September 2006. 10 U.S.C. § 920(a), *Manual for Courts-Martial, United States* (2005 ed.). Unless otherwise specified, all other references to the Uniform Code of Military Justice, Rules for Courts-Martial, and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The abusive sexual contact of which Appellant was found guilty was a lesser included offense of a specification alleging aggravated sexual contact, also in violation of Article 120, UCMJ. The court-martial found Appellant not guilty of the charged aggravated sexual contact, as well as two specifications of rape in violation of Article 120, UCMJ.

[3] U.S. CONST. amend. IV.

Appellant was unfairly prejudiced by the admission of a 2003 performance report containing information that Appellant received nonjudicial punishment for committing assault; (10) whether there has been unreasonable delay in the appellate review of Appellant's case; (11) whether the military judge erred in denying a defense motion to compel the victim's mental health records; and (12) whether the military judge erred in failing to exclude certain witness testimony pursuant to Mil. R. Evid. 403.[4] With respect to issues (4), (5), (6), (7), (8), (9), (10), and (12), we have carefully considered Appellant's contentions and find they do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). With respect to the remaining issues, we find no prejudicial error and we affirm the findings and the sentence.

## I. BACKGROUND

### A. Alleged Incidents of Sexual Assault

#### 1. MP

Appellant joined the Air Force in 1997. In 2001, while Appellant was stationed at Grand Forks Air Force Base (AFB), North Dakota, he married MP, with whom Appellant had a child. At Appellant's trial, MP testified regarding an incident in January 2003 when Appellant "attempt[ed] to start sexual relations" with her after she had gone to bed. When MP refused, Appellant "proceeded to sit on top" of MP and tried to force her "to perform oral sex on him." MP testified she was eventually able to push Appellant off of her. Shortly after the incident, MP reported to military authorities the attempted sexual assault and other alleged offenses Appellant committed against her that night. As a result, Appellant received nonjudicial punishment pursuant to Article 15, UCMJ, 10 U.S.C. § 815. After that incident, MP separated from Appellant, and they divorced in 2005.

#### 2. SG

In 2005, while Appellant was stationed at Minot AFB, North Dakota, he met SG.[5] Appellant and SG married several months later in November 2005. According to SG's trial testimony, Appellant was initially attentive and caring toward her, but within a month of their wedding he became controlling and verbally and physically abusive. Appellant's conduct included penetrating SG's mouth and vagina with his penis as she slept. SG described a particular inci-

---

[4] Appellant personally asserts issues (3), (4), (5), (6), (7), (8), (9), (10), (11), and (12) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[5] SG is also referred to as "SO" and "SN" at various points in the record. SG was her name at the time of Appellant's trial.

dent in September 2006 when she and a neighbor had been out drinking alcohol. When SG returned to her house, she took a shower, wrapped herself in a towel, and fell asleep on her bed. She awoke "a couple hours later" to Appellant penetrating her "rectum" with his penis. Appellant then turned SG over and penetrated her vagina with his penis. When SG "tried to crawl away," Appellant grabbed her hair and pushed her head into a pillow. SG "yelled," "tried to fight back," and "cried the whole time." According to SG, after Appellant vaginally penetrated her, he forced her to perform oral sex.

SG stayed with Appellant after this incident, although she testified the abuse continued. She described another specific incident of rape and battery that occurred around Christmas of 2006 during a trip to Minnesota. In 2007, SG moved with Appellant to Germany, where the abusive and controlling behavior continued and "got worse." She described a third specific incident of rape, forcible sodomy, and battery that occurred at their house in Germany in November 2009. In 2010, SG left Appellant in Germany and returned to the United States. Their divorce was finalized in 2012 or 2013.

### 3. SH

Appellant married SN in June 2013. In February 2016, Appellant was stationed at Joint Base Langley-Eustis, Virginia, and lived with SN in Newport News, Virginia, with their young son and with Appellant's teenage son from his marriage to MP. That month SH, a friend of SN, moved into their home after SN offered her a place to stay. In approximately March 2016, Appellant and SH engaged in consensual sex several times while SN was away on a trip for approximately ten days. In July 2016, SN learned that SH had been talking about having a sexual relationship with Appellant. Appellant and SN called the civilian police to have SH evicted. After the police informed SH that she would have to move out of the house, SH alleged that Appellant had sexually assaulted her. SH eventually alleged two instances of sexual abuse by Appellant: first, that he grabbed her hand and forced her to touch his exposed penis without her consent; and second, that on a later occasion he raped her after threatening her with a handgun. The civilian authorities did not act on these allegations, but SH also reported them to the Air Force Office of Special Investigations (AFOSI), which initiated an investigation.

### B. Court-Martial

Appellant was ultimately tried by a general court-martial for five alleged offenses: one specification of aggravated sexual contact against SH on or about 1 April 2016; one specification of rape against SH in April 2016; and three specifications of rape against SG that occurred in North Dakota, Minnesota, and Germany in September 2006, December 2006, and November 2009, respectively. Appellant was convicted of the September 2006 rape of SG as well as a

lesser-included offense of abusive sexual contact against SH for the alleged touching incident on or about 1 April 2016. He was acquitted of the greater offense of aggravated sexual contact against SH and of the other charged rapes of SH and SG.

The military judge granted a defense motion for a post-trial hearing pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), to consider newly-discovered evidence and a defense motion for a new trial. Most notably, at the hearing the military judge received testimony from JH, SH's half-sister. JH testified, *inter alia*, to the effect that SH was vindictive, manipulative, and had made false criminal allegations before; that SH asked JH to lie to AFOSI investigators about when SH first informed JH of the alleged rape; and, most significantly, that SH had admitted to JH that Appellant had not forced SH to have sex. The military judge granted the defense motion for a new trial in part, specifically as to the conviction for abusive sexual contact against SH and as to the sentence.

The convening authority subsequently dismissed the specification of abusive sexual contact and convened a rehearing on the sentence as to Appellant's remaining conviction for the rape of SG in September 2006. A general court-martial composed of officer and enlisted members sentenced Appellant to a dishonorable discharge, confinement for five years, and reduction to the grade of E-1. In accordance with the advice of his staff judge advocate, the convening authority approved a reduction only to the grade of E-3, as well as the dishonorable discharge and confinement for five years.

## II. DISCUSSION

### A. Mil. R. Evid. 413

#### 1. Additional Background

Before trial, in accordance with Mil. R. Evid. 413(b) and Mil. R. Evid. 404(b), the Government provided notice to the Defense of its intent to offer the testimony of MP regarding Appellant's uncharged attempt to force her to perform oral sex in January 2003, as well as other verbal and physical abuse MP suffered from Appellant during their marriage. In response, the Defense filed a motion in limine to exclude this testimony. The Defense contended, *inter alia*, that the evidence was insufficiently reliable for the court-martial to find by a preponderance that the alleged acts occurred, and that the probative value of such evidence was substantially outweighed by the danger of unfair prejudice. The Government opposed the Defense's motion in limine, contending *inter alia* that MP's testimony that Appellant attempted to force her to perform oral sex

was admissible evidence of propensity under Mil. R. Evid. 413 and also relevant under Mil. R. Evid. 404(b) to show Appellant's plan, intent, absence of mistake, and modus operandi with respect to charged offenses.

The military judge conducted a hearing where he received testimony from MP and SG, as well as other evidence and additional argument by counsel. The military judge found the evidence of Appellant's alleged attempted sexual assault against MP was admissible as propensity evidence under Mil. R. Evid. 413, but he rejected the use of the attempted sexual assault and other alleged verbal and physical abuse under Mil. R. Evid. 404(b). Accordingly, MP testified before the members regarding the January 2003 attempted sexual assault as described in the Background section above.

### 2. Law

A military judge's decision to admit evidence is reviewed for an abuse of discretion. *United States v. Jerkins*, 77 M.J. 225, 228 (C.A.A.F. 2018) (citing *United States v. Erikson*, 76 M.J. 231, 234 (C.A.A.F. 2017)). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

Mil. R. Evid. 413 provides that "[i]n a court-martial proceeding for a sexual offense, the military judge may admit evidence that the accused committed any other sexual offense. The evidence may be considered on any matter to which it is relevant." Mil. R. Evid. 413(a). "This includes using evidence of either a prior sexual assault conviction or uncharged sexual assaults to prove that an accused has a propensity to commit sexual assault." *United States v. Hills*, 75 M.J. 350, 354 (C.A.A.F. 2016) (citing *United States v. James*, 63 M.J. 217, 220–22 (C.A.A.F. 2006)).[6] For purposes of Mil. R. Evid. 413, a "sexual offense" includes, *inter alia*, "any conduct prohibited by Article 120[, UCMJ]," and an attempt to engage in such conduct. Mil. R. Evid. 413(d)(1), (6).

In *United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000), the United States Court of Appeals for the Armed Forces (CAAF) explained that military judges are required to make three threshold findings before admitting evidence under Mil. R. Evid. 413: (1) the accused is charged with an offense of sexual assault; (2) the evidence proffered is evidence of his commission of another offense of sexual assault; and (3) the evidence is relevant under Mil. R. Evid. 401

---

[6] However, evidence of sexual offenses charged in the same case may not be used as propensity evidence under Mil. R. Evid. 413. *Hills*, 75 M.J. at 356–57.

and Mil. R. Evid. 402. Additionally, the military judge must apply the balancing test of Mil. R. Evid. 403 to determine whether the probative value of the proffered evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or other countervailing considerations. *Id.*; *see* Mil. R. Evid. 403. In *Wright*, the CAAF set forth a non-exclusive list of factors to be considered under Mil. R. Evid. 403 in the context of Mil. R. Evid. 413 evidence: the strength of the proof of the prior act of sexual assault; the probative weight of the evidence; the potential for less prejudicial evidence; distraction of the factfinder; the time needed for proof of the prior conduct; the temporal proximity of the prior conduct to the charged offense(s); the frequency of the acts; the presence or absence of intervening circumstances between the prior acts and charged offenses; and the relationship between the parties involved. 53 M.J. at 482 (citations omitted). However, the CAAF has stated that "inherent in [Mil. R. Evid.] 413 is a general presumption in favor of admission." *United States v. Berry*, 61 M.J. 91, 94–95 (C.A.A.F. 2005) (citing *Wright*, 53 M.J. at 482–83).

### 3. Analysis

Appellant contends the military judge abused his discretion by admitting MP's testimony under Mil. R. Evid. 413 in two respects. He argues the evidence of the 2003 attempted sexual assault was insufficiently reliable. Appellant additionally argues the Mil. R. Evid. 403 factors articulated in *Wright* weigh against admission.

We find the military judge did not abuse his discretion. In his written ruling, the military judge appropriately applied Mil. R. Evid. 413 and *Wright* to find the three initial threshold requirements were met. *See Wright*, 53 M.J. at 482. First, Appellant was charged with multiple offenses of sexual assault in violation of Article 120, UCMJ.

Second, MP's proffered testimony was evidence of another, uncharged offense of sexual assault in January 2003; although not completed, an attempted sexual assault in violation of Article 120, UCMJ, qualifies as a "sexual offense." *See* Mil. R. Evid. 413(d). Appellant assails the military judge's ruling as to this requirement on the basis that "there must be at least a preponderance of the evidence that the sexual assault occurred," which he contends is lacking. We disagree. To clarify, under *Wright* the military judge is not required to find by a preponderance that the sexual assault occurred; rather, he need only find that the court members could make such a finding. *See United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citing *Wright*, 53 M.J. at 483) (additional citation omitted). We find the military judge could readily reach that conclusion in this case. MP's testimony was direct evidence of the 2003 attempted sexual assault. We are not persuaded by Appellant's argument that

the fact that MP reported the assault to military authorities rather than civilian authorities is somehow fatal to the credibility of MP's testimony.

Third, MP's testimony was relevant under Mil. R. Evid. 401 and 402. Relevant evidence is evidence that has any tendency to make the existence of any fact of consequence to determining the case more probable or less probable than it would be without the evidence. Mil. R. Evid. 401. Relevance is a low threshold. *United States v. Roberts*, 69 M.J. 23, 27 (C.A.A.F. 2010). Viewed in light of Mil. R. Evid. 413's presumption in favor of admission, we find no abuse of discretion. The military judge could reasonably find the evidence that Appellant attempted to sexually assault his then-spouse as she tried to sleep in 2003 had some logical relevance to the charged sexual offenses, particularly the rape of SG in 2006 for which Appellant was convicted. *See Berry*, 61 M.J. at 95 (citation omitted); *United States v. Bailey*, 55 M.J. 38, 40 (C.A.A.F. 2001).

Next we consider the military judge's balancing of the probative value of MP's testimony against any countervailing interests under Mil. R. Evid. 403, specifically in light of the factors enumerated in *Wright*, 53 M.J. at 482. The military judge analyzed these factors individually in his written ruling; accordingly, we review his ruling for a "clear abuse of discretion." *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (quoting *United States v. Ruppel*, 49 M.J. 247, 250 (C.A.A.F. 1998)). The military judge found the following factors favored admission: the strength of proof of the prior act (MP's testimony bolstered by a consistent sworn statement made close in time to the incident); the probative weight of the evidence (given the similarity between the uncharged sexual offense and a charged sexual offense); the unavailability of other evidence of the uncharged offense; the limited distraction to the factfinder; the limited extent of the testimony of the uncharged offense; the relative temporal proximity of the uncharged offense in 2003 to the first charged offense in 2006; and the lack of intervening circumstances. *See Wright*, 53 M.J. at 482. On the other hand, the military judge found the frequency of the uncharged acts—a single incident—and the fact that it was "not in the same manner" as the charged offenses weighed against admission. Finally, the military judge found the implications of the relationship of the parties to be mixed. On the one hand, the military judge noted Appellant's marriage to MP ended in divorce. Furthermore, he found evidence that MP was in communication with the alleged victims of the charged offenses, SG and SH. However, he further noted the fact that MP made an official report and sworn statement shortly after the 2003 incident, long before Appellant ever met SG or SH, mitigated concerns that MP's testimony was the product of collusion. Recognizing the presumption in favor of admitting Mil. R. Evid. 413 evidence and the deference afforded a military judge's detailed Mil. R. Evid. 403 analysis, we find the military judge did not clearly abuse his discretion by admitting MP's testimony regarding an uncharged prior sexual offense committed by Appellant.

**B. Request for New Trial**

**1. Law**

A petitioner may petition for a new trial "on the grounds of newly discovered evidence or fraud on the court." Article 73, UCMJ, 10 U.S.C. § 873. A new trial shall not be granted on the grounds of newly discovered evidence unless the petition shows that:

> (A) The evidence was discovered after the trial;
>
> (B) The evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and
>
> (C) The newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused.

R.C.M. 1210(f)(2); *see United States v. Luke*, 69 M.J. 309, 314 (C.A.A.F. 2011); *United States v. Johnson*, 61 M.J. 195, 198 (C.A.A.F. 2005).

"No fraud on the court-martial warrants a new trial unless it had a substantial contributing effect on a finding of guilty or the sentence adjudged." R.C.M. 1210(f)(3). Examples of fraud on a court-martial which may warrant granting a new trial include "confessed or proved perjury . . . which clearly had a substantial contributing effect on a finding of guilty" and "willful concealment by the prosecution from the defense of evidence favorable to the defense which . . . would probably have resulted in a finding of not guilty . . . ." R.C.M. 1210(f)(3), Discussion.

"[R]equests for a new trial . . . are generally disfavored," and are "granted only if a manifest injustice would result absent a new trial . . . based on proffered newly discovered evidence." *United States v. Hull*, 70 M.J. 145, 152 (C.A.A.F. 2011) (quoting *United States v. Williams*, 37 M.J. 352, 356 (C.M.A. 1993)).

A military judge decides a post-trial motion for a rehearing by applying the criteria for petition for a new trial set forth in Article 73, UCMJ, and R.C.M. 1210(f). *United States v. Williams*, 37 M.J. 352, 355–56 (C.M.A.1993). We review such rulings for an abuse of discretion. *Id.* at 356. We also review a military judge's selection of a remedy for an abuse of discretion. *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004).

**2. Analysis**

After the post-trial Article 39(a) hearing, the military judge issued a written ruling granting in part the Defense's motion for a new trial, specifically with respect to the conviction for abusive sexual contact against SH and the

sentence. The military judge declined to grant a new trial as to Appellant's conviction for raping SG in September 2006. The military judge explained that although the Defense had met the three criteria for a new trial with respect to abusive sexual contact, "the evidence warranting a new trial emphatically and only pertains to one specification, and that [rape] specification required separate proof and separate evidence from the affected specification."

Appellant contends the military judge abused his discretion because the specification of which Appellant was convicted was "inextricably intertwined" with the other charged offenses. He cites the military judge's acknowledgement of evidence of fraud by SH, the military judge's previous references to communication among the alleged victims, and the Government's closing argument that "linked all three women together in their theory of guilt." We are not persuaded.

First, the newly-discovered evidence adduced at the post-trial hearing centered on SH. Most notably, as described above, SH's half-sister JH testified that SH admitted Appellant had not forced SH to engage in sexual activity.[7] JH's testimony did indicate SH reached out to contact one of Appellant's former spouses after SH was evicted from Appellant's residence.[8] However, JH further testified that her impression was SH was inspired to make her allegations after learning about a prior allegation, and JH did not believe the former spouse "put [SH] up to it or anything like that." Thus the newly-discovered evidence did not relate to the charged offenses involving SG, other than indicating SH was aware of a prior allegation when she made her own allegations.

Furthermore, as noted above in relation to the first issue, it is clear MP's uncharged allegation of attempted sexual assault in 2003 was not a recent fabrication. MP reported the incident shortly after the event, long before any of the alleged victims were aware of one another.

In addition, SH provided no testimony regarding the September 2006 rape of SG for which Appellant was convicted. Therefore, to the extent SH's credibility was degraded by the newly-discovered evidence, it did not impact the sufficiency of the evidence supporting the remaining conviction.

Finally, the military judge gave the court members an appropriate "spillover" instruction regarding their deliberations on findings. The court members

---

[7] Other evidence included testimony from a prosecution paralegal, testimony from Appellant's spouse SN, and a stipulation of expected testimony from SH's spouse. Taken together, this additional evidence suggested that SH sent mocking or hostile text messages to SN immediately after the trial, and then falsely denied doing so.

[8] Although JH did not identify the former spouse by name, the context and other evidence indicate it was MP.

were instructed, *inter alia*, "Each offense must stand on its own and you must keep each offense separate. . . . [I]f you find or believe that [Appellant] is guilty of one charged offense, you may not use that finding or belief as the basis for inferring, assuming, or proving that he committed any other offense." We may presume the court members followed the military judge's instructions absent evidence to the contrary. *See United States v. Stewart*, 71 M.J. 38, 42 (C.A.A.F. 2012) (quoting *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000)). Far from evidence to the contrary, the court members' mixed findings in this case suggest they carefully evaluated each specification, and did not view the Government's case as a monolith to be accepted either whole or not at all.

Accordingly, we find Appellant has failed to demonstrate the military judge abused his discretion by declining to grant a new trial with respect to Appellant's conviction for the rape of SG in September 2006.

## C. Statute of Limitations

### 1. Law

The statute of limitations applicable to a particular offense is a question of law, which appellate courts review de novo. *United States v. Mangahas*, 77 M.J. 220, 222 (C.A.A.F. 2018) (citing *United States v. Lopez de Victoria*, 66 M.J. 67, 73 (C.A.A.F. 2008) (additional citation omitted)).

Article 43(a), UCMJ, 10 U.S.C. § 843(a), found in the *Manual for Courts-Martial, United States* (2006 ed.), provides in pertinent part that '[a] person charged with . . . rape or sexual assault . . . may be tried and punished at any time without limitation."

### 2. Analysis

Appellant was convicted for committing rape against SG in September 2006. Appellant argues that, in light of *Mangahas*, "the 2006 amendment to 10 U.S.C. § 843 was not effective until 1 October 2007," and therefore the prosecution of the September 2006 rape was barred by the statute of limitations.

Prior to 6 January 2006, Article 43(a), UCMJ, provided that a person charged "with any offense punishable by death" was subject to trial and punishment by court-martial "at any time without limitation." 10 U.S.C. § 843(a), *Manual for Courts-Martial, United States* (2005 ed.) (2005 *MCM*). In *Mangahas*, the CAAF overruled its precedent in *Willenbring v. Neurauter*, 48 M.J. 152, 178, 180 (C.A.A.F. 1998), to clarify that a rape in violation of Article 120, UCMJ, allegedly committed in 1997 was not "an offense punishable by death" within the meaning of the pre-2006 version of Article 43, UCMJ, because the death penalty was "simply unavailable for the charged offense on constitutional grounds." 77 M.J. at 224. Therefore, the alleged 1997 rape was subject

to the general five-year statute of limitation applicable to most offenses under the UCMJ. *Mangahas*, 77 M.J. at 225; *see* 10 U.S.C. § 843(a) (2005 *MCM*).

However, on 6 January 2006, the National Defense Authorization Act for Fiscal Year 2006 (NDAA) amended Article 43(a), UCMJ, to explicitly remove any temporal limitation on trial or punishment for the offense of rape, as well as murder or "any other offense punishable by death." Pub. L. No. 109–163, § 553, 119 Stat. 3136, 3264 (2006). In *United States v. Briggs*, 78 M.J. 289, 293–95 (C.A.A.F. 2019), the CAAF held that the 2006 amendment did not retroactively apply to a rape allegedly committed in 2005, which was still subject to a five-year statute of limitations. However, the CAAF has never held that a rape allegedly committed after 6 January 2006 was subject to the five-year limit.

Appellant cites no authority for his assertion that Congress' removal of the temporal limitation on trial or punishment for the offense of rape was not effective until 1 October 2007, and we find none.[9] Congress did not specify a particular implementation date with respect to § 553 of the NDAA, which is the section that removed the statute of limitations for the offense of rape. "It is a well-established principle of statutory construction that, absent a clear direction of Congress to the contrary, a law takes effect on the date of its enactment." *United States v. Christian*, 63 M.J. 205, 208 (C.A.A.F. 2006) (citations omitted). Therefore, the September 2006 rape for which Appellant was convicted was not subject to any statute of limitations, and Appellant's assignment of error is without merit.

**D. Mil. R. Evid. 513**

**1. Additional Background**

On 13 April 2018, prior to the sentencing rehearing, the Defense submitted a motion to compel production of SG's mental health records from 1 January 2006 onward for *in camera* review by the military judge.[10] The Defense attached to the motion several emails exchanged between Appellant and SG between December 2010 and February 2011 in which SG briefly referred to advice she had received from her "therapist." The Defense contended that by referencing her therapy sessions, SG had waived any psychotherapist-patient

---

[9] Congress did provide certain other modifications to the UCMJ implemented by the NDAA with an effective date of 1 October 2007. However, this delayed effective date applied to § 552 of the NDAA, and not to § 553 which removed the statute of limitations for rape. Pub. L. No. 109–163, §§ 552–53, 119 Stat. 3136, 3264 (2006).

[10] Portions of the record and briefs addressing this issue were sealed pursuant to Mil. R. Evid. 412(c)(2) and R.C.M. 1103A. These materials remain sealed. Any discussion of sealed material in this opinion is limited to what is necessary for our analysis.

privilege regarding those communications pursuant to Mil. R. Evid. 513. Additionally, the Defense argued that *in camera* review of the records was warranted because of the likelihood that they contained information that contradicted SG's prior testimony. The Government and SG, through counsel, opposed production of the records for *in camera* review.

The military judge denied the defense motion. In a written ruling, he held that although the limited disclosures SG made regarding communications with her therapist "certainly . . . forfeited any privilege with respect to any previously confidential communications she voluntarily revealed to [Appellant]," SG "retain[ed] her [Mil. R. Evid.] 513 privilege with respect to any other communications between herself and her psychotherapist, absent any evidence indicating that the privilege does not apply." Furthermore, the military judge found the Defense failed to meet its burden to demonstrate a "specific factual basis demonstrating a reasonable likelihood" that the requested records "would yield evidence admissible under an exception to the privilege." The military judge found none of the enumerated exceptions to Mil. R. Evid. 513 applied, and that any prospect that the records would reveal SG had testified falsely at Appellant's trial "to be speculative at best and . . . d[id] not rise to the level of establishing that [Appellant] will be deprived of any constitutional right by the non-production" of the records.

**2. Law**

We review a military judge's ruling on a production request for an abuse of discretion. *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015).

Mil. R. Evid. 513(a) provides:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to a psychotherapist, in a case arising under the [UCMJ], if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

The privilege is subject to a number of specific exceptions. Mil. R. Evid. 513(d). Prior to 17 June 2015, these exceptions expressly included when the records are "constitutionally required." Mil. R. Evid. 513(d)(8) as amended by Exec. Order 13,643, 78 Fed. Reg. 29,559, 29,592 (15 May 2013). However, Executive Order 13,696 eliminated the enumerated "constitutionally-required" exception to Mil. R. Evid. 513 as of 17 June 2015. Exec. Order 13,696, 80 Fed. Reg. 35,783 (17 Jun. 2015).

Before ordering the production or admission of a patient's records or communications under Mil. R. Evid. 513, the military judge must conduct a closed hearing at which the patient is provided a reasonable opportunity to attend

and be heard. Mil. R. Evid. 513(e)(2). Prior to conducting an in camera review of Mil. R. Evid. 513 evidence, "the military judge must find by a preponderance of the evidence that the moving party showed," *inter alia*, "a specific factual basis demonstrating a reasonable likelihood that the records or communications would yield evidence admissible under an exception to the privilege." Mil. R. Evid. 513(e)(3)(A).

### 3. Analysis

On appeal, Appellant contends the military judge abused his discretion by denying the defense motion for production, and should have at a minimum conducted an *in camera* review. We conclude otherwise.

First, we agree with the military judge that SG's brief references to advice she received from her therapist did not waive her Mil. R. Evid. 513 privilege with respect to other communications with any psychotherapist. As we explained in *United States v. Morales*, No. ACM 39018, 2017 CCA LEXIS 612, at *20 (A.F. Ct. Crim. App. 13 Sep. 2017), *rev. denied*, 77 M.J. 310 (C.A.A.F. 2018) (unpub. op.):

> Mil. R. Evid. 513 entitle[s] [the patient] "to refuse to disclose and to prevent any other person from disclosing *a confidential communication* made between the patient and a psychotherapist . . . ." Mil. R. Evid. 513(a) (emphasis added). Thus the patient may elect to invoke the privilege with respect to one such confidential communication, but not another.

A patient's discretion over partial disclosure of confidential communications is tempered by Mil. R. Evid. 510(a), which provides that voluntary disclosure of "any significant part of the matter or communication" waives the privilege "under such circumstances that it would [thereafter] be inappropriate to allow the claim of privilege." However, SG's passing references to her therapist's advice to be open and frank in her communications with Appellant did not disclose anything SG said to her therapist, did not suggest the presence of any information pertinent to the alleged offense or to SG's credibility, and did not implicate Mil. R. Evid. 510(a). We find no abuse of discretion in the military judge's conclusion that SG had not waived her Mil. R. Evid. 513 privilege beyond any information she specifically relayed to Appellant.

Accordingly, we next consider whether the military judge abused his discretion in finding *in camera* review of records covered by the Mil. R. Evid. 513 privilege was not warranted. We agree with the military judge that the Defense failed to demonstrate a "specific factual basis" that the records sought would yield evidence admissible under an exception to the privilege. The Defense did not rely on any of the enumerated exceptions in Mil. R. Evid. 513(d), none of which appear to apply. Rather, the Defense argued that SG's emails indicate

she "discussed the marriage with a therapist," and that "alone demonstrates that there are likely to be significant [Mil. R. Evid.] 513 records that relate specifically to SG's account of the events in question." The defense motion further asserted that, in light of various alleged problems with SG's credibility, "[c]ommon sense demands [the court members] know the possibility the possibility that SG's recollection of the event could not be accurate." The motion concluded, "the sought after information will be invaluable to [Appellant] in presenting a full and complete picture of the conviction at the sentencing hearing," and therefore disclosure was constitutionally required.

As the military judge observed, this is speculation at best. The Defense did not identify any *specific* statement or piece of information that it believed existed in the records sought, much less demonstrate that the disclosure of such information was constitutionally required in order for Appellant to prepare for his sentence rehearing. The courts of criminal appeals have reached various conclusions when analyzing how an accused's constitutional rights may require disclosure of communications covered by Mil. R. Evid. 513 in cases where no enumerated exception applies. *See Morales*, unpub. op. at \*22–28; *see also J.M. v. Payton-O'Brien*, 76 M.J. 782, 786–92 (N-M. Ct. Crim. App. 2017); *LK v. Acosta*, 76 M.J. 611, 615 (A. Ct. Crim. App. 2017). However, even when an enumerated "constitutionally required" exception existed in the previous version of Mil. R. Evid. 513, the party seeking production was still required to demonstrate a "specific factual basis" that the records sought would yield admissible evidence. *See United States v. Chisum*, 75 M.J. 943, 946 (A.F. Ct. Crim. App. 2016), *aff'd*, 77 M.J. 176 (C.A.A.F. 2018); *see also Morales*, unpub. op. at \*22–28 (finding no abuse of discretion in denying disclosure under Mil. R. Evid 513 where the defense failed to demonstrate specific factual basis, assuming *arguendo* a non-enumerated constitutional exception exists). Appellant has failed to make such a showing. Accordingly, we find the military judge did not abuse his discretion.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Arti-

cles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court