# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40338**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jamieson T. HENDERSON**
Airman (E-2), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 8 March 2024

————————————

*Military Judge*: Brett A. Landry.

*Sentence*: Sentence adjudged 28 April 2022 by GCM convened at Travis Air Force Base, California. Sentence entered by military judge on 7 June 2022: Dishonorable discharge, confinement for 42 months, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

*For Appellant*: Lieutenant Colonel Allen S. Abrams, USAF; Major Heather M. Caine, USAF; Philip D. Cave, Esquire.

*For Appellee*: Major Olivia B. Hoff, USAF; Captain Kate E. Lee, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, CADOTTE, and MASON, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Chief Judge JOHNSON and Senior Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MASON, Judge:

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of one charge with two specifications of sexual assault and

two specifications of abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1,2] Appellant was sentenced to a dishonorable discharge, confinement for 42 months, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings or sentence.

Appellant raises eight assignments of error which we have reworded: (1) whether the conviction for abusive sexual contact upon SA is legally and factually sufficient; (2) whether the convictions for abusive sexual contact upon TE and both sexual assaults upon TE are factually sufficient; (3) whether Appellant is entitled to relief where the military judge determined that Appellant's pretrial statements were admissible, but where trial counsel never offered those statements at trial; (4) whether Appellant was denied a speedy trial in violation of Rule for Courts-Martial (R.C.M.) 707; (5) whether trial defense counsel's and the military judge's advisement to Appellant that a panel composed of court members would not need to render a unanimous verdict, resulting in Appellant's election of trial by military judge alone, were erroneous in that a unanimous verdict was required by the United States Constitution; (6) whether the military judge abused his discretion in admitting evidence pursuant to Military Rule of Evidence (Mil. R. Evid.) 413; (7) whether trial defense counsel were ineffective for declining to prepare Appellant to testify where he expressed his wish to testify; and (8) whether trial defense counsel's cumulative errors amount to ineffective assistance of counsel.[3]

We have carefully considered issues (3), (4), and (5) and find they do not require discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).[4] Regarding issue (8), Appellant personally advances several allegations of deficient performance by his trial defense counsel arguing that cumulatively they amount to ineffective assistance of counsel. We have carefully considered each allegation individually and in the aggregate and find no relief

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ, Military Rules of Evidence, and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant was acquitted of one charge with one specification of burglary, in violation of Article 129, UCMJ, 10 U.S.C. § 929.

[3] Appellant raises issues (3), (4), (6), (7), and (8) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] *See also United States v. Anderson*, 83 M.J. 291, 302 (C.A.A.F. 2023) (finding no constitutional violation where the military judge did not require a unanimous verdict in a court-martial), *cert. denied*, No. 23-437, 601 U.S. __ (20 Feb. 2024).

is warranted. As to the remaining issues, we find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

In February 2020, Appellant was living in the dorms at Travis Air Force Base, California. He was part of a friend group of Airmen there with TE, SA, EN, DB, and DP, amongst others. This group would regularly get together in various combinations and communicated frequently using text messaging. Notably, SA and TE became best friends.

Appellant was friends with DB, SA's suitemate. Appellant met SA at a birthday party in January 2020. They did not meet "officially" but were part of the same group at the party. Over the next few weeks, Appellant came to SA's dorm room a couple of times wanting to talk. Appellant knew that his friend, DP, was romantically interested in SA and he tried to encourage SA to give DP "a chance."

At some point in January 2020, Appellant showed SA, TE and others a list he had on his phone of approximately 60 women's names. He presented the list as the women who he had slept with. Appellant stated that they had all "finished" meaning that they had had an orgasm with him.

On 13 February 2020 around 2000 hours, Appellant came to SA's room from DB's room. Appellant wanted to hang out while DB was doing something else. SA sat on her bed while Appellant sat on SA's chair on the other side of the room. As they were talking, their conversation turned to working out. Appellant invited SA to come work out with him and DP sometime. SA declined stating that she wanted to get back into it, but that she had not been to the gym in a while. After about ten to fifteen minutes in the room, Appellant stood up and said, "Ok, I won't bother you anymore." He proceeded to walk to the bed and told her that he wanted to see "what she was working with." He also said SA "was fine" and she "looked good." At the bed, Appellant started grabbing, rubbing, and squeezing SA's buttocks. SA pushed his hand away and tried to laugh it off. Appellant responded with "shhh" and moved his hand to SA's waistband. SA got up from the bed, pushed Appellant towards the door back to DB's room and told Appellant that he should probably go. Appellant then left the room. Appellant's actions formed the basis for the abusive sexual contact against SA.

TE and EN started out as friends. By February 2020, they were in a romantic relationship.[5] Appellant and EN spoke about this relationship at times. One of those times was on 14 February 2020. EN purchased gifts for TE for

---

[5] This relationship was described by SA as "on again, off again."

Valentine's Day. After speaking with Appellant about the relationship, with Appellant telling EN that he should not be in the relationship, EN called TE on FaceTime[6] and said, "[T]his is done, I don't want to be together anymore." EN was 27 years old and harbored doubts about the relationship due to the age difference between EN and TE, who was several years younger. TE was upset about the breakup and blamed Appellant for the ending of the relationship.

On 16 February 2020, Appellant and TE exchanged text messages around 0230 hours about what people were doing. Appellant then asked TE to come to his room as he was making his bed. TE responded by telling Appellant to come to her and DB's suite as DP was there. Appellant said that he would go to their room. They talked later in the day and Appellant told TE that she "failed the test." TE did not know what he was talking about. She asked him about it a few times, but Appellant said that he would tell her later. This issue remained unresolved into the next day, Monday, 17 February 2020.

Around 2030 hours, Appellant and TE communicated again on text. Appellant asked where TE was. TE stated that she was in her room and that DP was there. Appellant said that he would be there later. At 2209, Appellant left DB's room and proceeded to TE's room. Appellant entered TE's room. DP was still there. TE and DP were drinking vodka. Appellant invited TE and DP to DB's room to hang out. TE declined but said that Appellant could come back down and hang out with her and DP if he wanted to after he was done hanging out in DB's room. TE and DP continued to talk and drink. At some point, TE became sleepy. Noticing that she was falling asleep, DP left the room.

At midnight on 18 February 2020, Appellant was in DB's room. At 0017, he left DB's room and returned to TE's room. He opened the door and asked "where everybody had went." TE responded that they all went to bed and wished him good night. Appellant did not leave the room. He entered the room and approached the bed. TE asked, "What's going on? What's up?" She then asked him again what test she had failed. Appellant responded that TE did not help him make his bed. Appellant proceeded to put his hand on TE's buttocks in a groping and grabbing manner. TE pushed his arm away and said, "What are you doing? Don't do that." Appellant responded by "shushing" TE and saying, "It's ok. I'm fine." Appellant continued to repeat himself. TE rolled onto her side to get him away from touching her buttocks. Appellant leaned over, moved his hand down TE's backside and proceeded to penetrate her vagina with his finger. TE said, "Stop this. What are you doing?" Appellant just repeated himself saying, "Shush. You're fine. It's ok." TE tried to get off the edge of the bed. Appellant grabbed TE by the hips and forced her to the side of the

---

[6] FaceTime is commonly understood to be an application utilized for audio and video calling.

bed, bending her over the bed. Appellant proceeded to pull TE's hips down and penetrate her with his penis. TE froze. Appellant penetrated her for five to ten minutes before he ejaculated. Appellant's conduct formed the basis for the abusive sexual contact and two sexual assaults against TE. After he was done, Appellant asked TE if she had an orgasm. TE lied and said that she did. Appellant then left. Review of the closed circuit footage of the area indicates that the entire interaction lasted about ten minutes. At 0028, Appellant returned to DB's room. Appellant appeared happy and told the group in the room, "I can't tell you but I'm legendary."

Later that day, TE told DP and SA what happened. They recommended that TE go to the hospital and TE agreed to go. While at the hospital, TE underwent a sexual assault examination. DNA testing of the semen recovered during the examination corroborated TE's assertion that Appellant vaginally penetrated her with his penis and ejaculated.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

In issue (1), Appellant challenges the legal and factually sufficiency of the abusive sexual contact offense upon SA. In issue (2), Appellant challenges the factually sufficiency of the offenses involving TE.

#### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (*quoting United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (*citing United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted). The test for legal sufficiency "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319 (1973)).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,' [this] court is 'convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (*quoting United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (*quoting Washington*, 57 M.J. at 399). This court's review of the factual sufficiency of evidence for findings is limited to the evidence admitted at trial. *See United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007) (citations omitted); *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted); Article 66(d), UCMJ, 10 U.S.C. § 866(d).

Appellant was convicted of abusive sexual contact upon SA in violation of Article 120, UCMJ, which required the Government to prove the following two elements beyond a reasonable doubt: (1) that Appellant committed sexual contact upon SA by touching her buttocks with his hand with the intent to gratify or arouse his sexual desire; and (2) that Appellant did so without SA's consent. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 60.b.(4)(d).

Appellant was convicted of sexual assault upon TE in violation of Article 120, UCMJ, which required the Government to prove the following two elements beyond a reasonable doubt: (1) that Appellant committed a sexual act upon TE by penetrating her vulva with his penis; and (2) that Appellant did so without TE's consent. *See MCM*, pt. IV, ¶ 60.b.(2)(d).

Appellant was convicted of sexual assault upon TE in violation of Article 120, UCMJ, which required the Government to prove the following two elements beyond a reasonable doubt: (1) that Appellant committed a sexual act upon TE by penetrating her vulva with his finger with an intent to arouse his sexual desire; and (2) that Appellant did so without TE's consent. *See MCM*, pt. IV, ¶ 60.b.(2)(d).

Appellant was convicted of abusive sexual contact upon TE in violation of Article 120, UCMJ, which required the Government to prove the following two elements beyond a reasonable doubt: (1) that Appellant committed sexual contact upon TE by touching her buttocks with his hand with the intent to gratify or arouse his sexual desire; and (2) that Appellant did so without TE's consent. *See MCM*, pt. IV, ¶ 60.b.(4)(d).

"The term 'consent' means a freely given agreement to the *conduct at issue* by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance does not constitute consent." *MCM*, pt. IV, ¶ 60.a.(g)(7)(A) (emphasis added). "All the surrounding circumstances are to be considered in determining whether a person gave consent." *MCM*, pt. IV, ¶ 60.a.(g)(7)(C).

"[I]t is a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense." R.C.M. 916(j)(1). If the mistake goes to an element requiring general intent, it "must have existed in the mind of the accused and must have been reasonable under all the circumstances." *Id.* "Therefore, an honest and reasonable mistake that the victim consented to the charged sexual contact is an affirmative defense to abusive sexual contact as it is to other sexual offenses." *Rodela*, 82 M.J. at 526; *see also United States v. McDonald*, 78 M.J. 376, 379 (C.A.A.F. 2019) (as a defense to a charge of sexual assault); *United States v. DiPaola*, 67 M.J. 98, 102 (C.A.A.F. 2008) (as a defense to a charge of indecent assault); *United States v. Hibbard*, 58 M.J. 71, 72 (C.A.A.F. 2003) (as a defense to a charge of rape). Once raised, the Government bears the burden to prove beyond a reasonable doubt that the defense does not exist. R.C.M. 916(b)(1); *see McDonald*, 78 M.J. at 379.

We previously recognized,

> In considering whether the defense of mistake of fact as to consent was raised at trial, we "consider the totality of the circumstances at the time of the offense" and consider "whether the record contains some evidence of an honest and reasonable mistake to which the [factfinder] could have attached credit if they had so desired." While the quantity of evidence required is low, the record must contain evidence supporting both the subjective "honest" and the objective "reasonable" mistaken belief. If a mistake is honest yet "patently unreasonable," the defense is unavailable to an appellant.

*Rodela*, 82 M.J. at 526 (alteration in original) (citations omitted).

**2. Analysis**

***a. Abusive Sexual Contact upon SA***

Appellant argues that the evidence supporting his conviction for abusive sexual contact upon SA is both legally and factually insufficient in that it did not disprove consent or a mistake of fact as to consent. We disagree.

SA and Appellant were not in a sexual or romantic relationship at any time. Rather, the evidence indicates that they were merely friends. Further, the record is devoid of evidence indicating prior to 13 February 2020, there were interactions sexual in nature between SA and Appellant.

Appellant argues that on 13 February 2020, the date of the incident, his and SA's discussion of working out invited or at least led Appellant to reasonably believe that he was invited to touch SA's buttocks. SA's testimony on this matter does not support this conclusion. SA did not consent to Appellant touching her buttocks. When he did, she pushed his hand away. Appellant continued to touch her buttocks and moved his hand to SA's waistband before SA pushed him towards the door. Moreover, the evidence did not support that Appellant had an honest mistake of fact as to SA's consent. To the extent that he actually did, under the facts and circumstances of this case, such a belief would not have been reasonable. *See United States v. Davis*, 76 M.J. 224, 230 (C.A.A.F. 2017).

Appellant next argues that because they were talking about working out, his touching of SA's buttocks was not with the intent to gratify his sexual desire. The facts presented disprove this assertion. SA described Appellant's touching as grabbing, rubbing, and squeezing of her buttocks. Additionally, she testified that Appellant said SA "was fine" and she "looked good." This evidence taken together clearly supports the military judge's finding that Appellant's touching was done with an intent to gratify or arouse his sexual desire and therefore the military judge could have found the essential elements of the crime beyond a reasonable doubt.

Viewing the evidence in the light most favorable to the Government, the military judge rationally found the essential elements of abusive sexual contact beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98. Furthermore, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt. *See Reed*, 54 M.J. at 41.

### b. Abusive Sexual Contact and Sexual Assaults upon TE

Appellant argues that the evidence supporting his convictions upon TE are factually insufficient. He refers to "critical weaknesses" in the Government's case.

The evidence in this case established that Appellant went to TE's room shortly after midnight. Upon arrival, he opened the door and found TE in bed and DP gone. After TE told him that everyone had left and good night, Appellant entered the room and proceeded to TE's bed. He touched her buttocks, digitally penetrated her, physically positioned her, and penetrated her vagina with his penis.

Appellant points to evidence related to a list of Appellant's past sexual partners with TE being on it indicating the interaction was consensual. This evidence is not particularly inculpatory or exculpatory. On one hand, it could be read to indicate consensual partners. On the other hand, it could be read to indicate victims. The testimony regarding this list does not shed much light on the distinction between the two.

Appellant next points to trial counsel's theory that Appellant targeted TE, arguing that because the evidence did not support that theory, the evidence supporting the convictions must be factually insufficient. While the evidence showed that Appellant did not think TE should be in a relationship with EN, it did not clearly support a conclusion that Appellant was targeting TE for sexual assault by trying to influence that relationship. However, neither the military judge, acting as the factfinder, nor this court needs to resolve that question. The military judge and this court review the evidence in conjunction with the applicable law to determine Appellant's guilt or innocence. In other words, trial counsel is not burdened with proving every theory asserted at trial beyond a reasonable doubt. They are burdened with proving the elements and disproving applicable defenses beyond a reasonable doubt. Here, they did so.

Appellant next points to a text message exchange between TE and DP asserting that it contradicts TE's account in significant respects. After Appellant left the room, TE texted DP and asked if he was awake and gave some detail about what happened. When DP did not respond, TE went to bed. The next morning, DP responded. TE went to DP's room, and she told him everything that happened. This text exchange does not contradict or raise doubt regarding the veracity of her testimony.

Finally, Appellant avers that TE's statements to others do not support her testimony or the convictions. We find TE's testimony is corroborated by substantial evidence. Later in the same day as the incident, TE went to the hospital, described what happened to her, and underwent a sexual assault examination. That examination included collection of samples that permitted DNA testing of semen found in her vagina. This DNA testing corroborated TE's assertion that Appellant penetrated her vagina with his penis and ejaculated. Moreover, the closed circuit footage in the dorms corroborated Appellant's movements, including the fact that Appellant left DB's room at 0017 and returned at 0028. This indicates that Appellant's entire interaction with TE in her room lasted about ten minutes. All of the evidence at trial, taken together, establishes the elements of the offenses against TE and disproved both consent and the defense of mistake of fact as to consent.

After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced

of Appellant's guilt of these offenses beyond a reasonable doubt. *See Reed*, 54 M.J. at 41.

## B. Admission of Evidence Pursuant to Mil. R. Evid. 413

### 1. Additional Background

Before trial, in accordance with Mil. R. Evid. 413, the Government provided notice to the Defense of its intent to offer the testimony from MO and TC to show that Appellant sexually assaulted each of them in 2018 and 2019 respectively. In response, the Defense filed a motion in limine to exclude both MO's and TC's testimony. The Government opposed the motion.

The military judge conducted a hearing where he received evidence regarding MO's and TC's allegations. The military judge excluded evidence related to MO's allegation and permitted evidence related to TC's allegation.

At trial, TC was permitted to testify substantially as follows: She was an Airman stationed at Travis Air Force Base in August 2018. Around that time, she met Appellant through a dating application. After initially meeting, they spent time together a couple of times, including hanging out in his dorm room and going to training on-base together. They also engaged in consensual sex on two occasions. In January 2019, TC was out for a night with friends. When she returned to the base, she text messaged Appellant to see if she could come to his room to hang out. He agreed. She arrived after midnight and fell asleep in Appellant's bed. TC and Appellant did not engage in sexual contact prior to TC falling asleep. She awoke to Appellant digitally penetrating her. She tried to push Appellant's hand away. When she did so, Appellant slapped her hand away and said, "[N]o." Appellant then flipped TC over onto her stomach and penetrated her vaginally with his penis. This lasted approximately 15 minutes before Appellant "finished." TC left the room around 0700.

### 2. Law

A military judge's decision to admit evidence is reviewed for an abuse of discretion. *United States v. Jerkins*, 77 M.J. 225, 228 (C.A.A.F. 2018) (citing *United States v. Erikson*, 76 M.J. 231, 234 (C.A.A.F. 2017)).

> A military judge abuses his or her discretion when: (1) the military judge predicates a ruling on findings of fact that are not supported by the evidence of record; (2) the military judge uses incorrect legal principles; (3) the military judge applies correct legal principles to the facts in a way that is clearly unreasonable; or (4) the military judge fails to consider important facts.

*United States v. Rudometkin*, 82 M.J. 396, 401 (C.A.A.F. 2022) (citations omitted).

Mil. R. Evid. 413 provides that "[i]n a court-martial proceeding for a sexual offense, the military judge may admit evidence that the accused committed any other sexual offense. The evidence may be considered on any matter to which it is relevant." Mil. R. Evid. 413(a). "This includes using evidence of either a prior sexual assault conviction or uncharged sexual assaults to prove that an accused has a propensity to commit sexual assault." *United States v. Hills*, 75 M.J. 350, 354 (C.A.A.F. 2016) (*citing United States v. James*, 63 M.J. 217, 220–22 (C.A.A.F. 2006)). For purposes of Mil. R. Evid. 413, a "sexual offense" includes, *inter alia*, "any conduct prohibited by Article 120[, UCMJ]," and an attempt to engage in such conduct. Mil. R. Evid. 413(d)(1), (6).

In *United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000), the United States Court of Appeals for the Armed Forces (CAAF) explained that military judges are required to make three threshold findings before admitting evidence under Mil. R. Evid. 413: (1) the accused is charged with an offense of sexual assault; (2) the evidence proffered is evidence of his commission of another offense of sexual assault; and (3) the evidence is relevant under Mil. R. Evid. 401 and Mil. R. Evid. 402. Additionally, the military judge must apply the balancing test of Mil. R. Evid. 403 to determine whether the probative value of the proffered evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or other countervailing considerations. *Id*.; *see* Mil. R. Evid. 403. In *Wright*, the CAAF set forth a non-exclusive list of factors to be considered under Mil. R. Evid. 403 in the context of Mil. R. Evid. 413 evidence: the strength of the proof of the prior act of sexual assault; the probative weight of the evidence; the potential for less prejudicial evidence; distraction of the factfinder; the time needed for proof of the prior conduct; the temporal proximity of the prior conduct to the charged offense(s); the frequency of the acts; the presence or absence of intervening circumstances between the prior acts and charged offenses; and the relationship between the parties involved. 53 M.J. at 482 (citations omitted). However, the CAAF has stated that "inherent in [Mil. R. Evid.] 413 is a general presumption in favor of admission." *United States v. Berry*, 61 M.J. 91, 94–95 (C.A.A.F. 2005) (citing *Wright*, 53 M.J. at 482–83).

### 3. Analysis

Appellant personally asserts that the military judge abused his discretion by admitting TC's testimony because an allegation of a single incident (TC's) alone does not demonstrate a propensity to commit similar offenses and that Mil. R. Evid. 403 should bar that one prior allegation.

We find the military judge did not abuse his discretion. In his written ruling, the military judge appropriately applied Mil. R. Evid. 413 and *Wright* to find the three initial threshold requirements were met. *See Wright*, 53 M.J. at

482. First, Appellant was charged with multiple applicable offenses in violation of Article 120, UCMJ.

Second, TC's proffered testimony was evidence of another, uncharged offense of sexual assault. Specifically, as the military judge factually determined, the evidence tended to show that Appellant either attempted or completed a sexual assault by digital penetration as well as a completed sexual assault by penile penetration upon TC. Both attempted and completed sexual assaults in violation of Article 120, UCMJ, qualify as "sexual offenses." *See* Mil. R. Evid. 413(d).

Third, TC's testimony was relevant under Mil. R. Evid. 401 and 402. Relevance is a low threshold. *United States v. Roberts*, 69 M.J. 23, 27 (C.A.A.F. 2010). Viewed in light of Mil. R. Evid. 413's presumption in favor of admission, we find no abuse of discretion. The military judge could reasonably find the evidence that Appellant attempted or completed sexual assault by digital penetration and completed sexual assault by penile penetration against TC had some logical relevance to the charged sexual offenses, specifically, that Appellant may have had the propensity to commit the charged sexual offenses upon TE and even SA. *See Berry*, 61 M.J. at 95 (citation omitted).

Next, we consider the military judge's balancing of the probative value of TC's testimony against any countervailing interests under Mil. R. Evid. 403, specifically in light of the factors enumerated in *Wright*, 53 M.J. at 482. The military judge analyzed these factors in his written ruling; accordingly, we review his ruling for a "clear abuse of discretion." *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (quoting *United States v. Ruppel*, 49 M.J. 247, 250 (C.A.A.F. 1998)). Appellant does not challenge the military judge's findings with regards to these factors. His argument centers on the assertion that one prior incident cannot alone establish propensity.

It is well-settled that one incident alone is sufficient to constitute admissible evidence of propensity in accordance with Mil. R. Evid. 413. In fact, in *Wright*, our superior court did just that. 53 M.J. at 479 (holding that evidence pertaining to the indecent assault on A1C P in October 1996 (to which Appellant pleaded guilty) was admissible propensity evidence to prove that appellant also indecently assaulted A1C D in April 1996 (to which Appellant pleaded not guilty)).

Recognizing the presumption in favor of admitting Mil. R. Evid. 413 evidence and the deference afforded a military judge's detailed Mil. R. Evid. 403 analysis, we find the military judge did not abuse his discretion by admitting TC's testimony regarding uncharged sexual offenses committed by Appellant.

**C. Ineffective Assistance of Counsel – Appellant Not Testifying**

**1. Additional Background**

Appellant personally asserts that his three trial defense counsel were ineffective. In support of this assertion, Appellant submitted a post-trial affidavit wherein he makes assertions regarding his interactions with his trial defense counsel. Relevant to this assignment of error, Appellant alleges that his trial defense counsel declined to prepare him to testify, and Appellant thereby lacked any meaningful choice to testify. In his affidavit, Appellant concedes that his trial defense counsel conducted a mock cross-examination session with him prior to trial and another session after the victims in the case testified.

All three of Appellant's trial defense counsel provided declarations in response to an order from this court to do so. Before trial, Appellant's trial defense counsel talked amongst themselves about how they would advise Appellant with regards to him testifying. They conducted practice sessions with Appellant on testifying. Those sessions raised concerns in their mind with regards to the potential benefits and consequences of Appellant testifying. After weighing those potential benefits and consequences, Appellant was advised that he should not testify. Appellant was also advised several times that his decision to testify or not was his choice alone. Before trial began, he signed a memorandum required by the Trial Defense Division's Operating Instruction and on it, indicated that he did not want to testify.

At trial, the Defense presented evidence and rested. Appellant did not testify. The military judge held the following inquiry with Appellant on the record:

> [Military Judge (MJ)]: Airman Henderson, one of the choices, as I'm sure your defense counsel have explained to you, that is completely up to you in this case in terms of how you present your defense, is whether or not to testify in this case. I know you did not testify, and I want to confirm, was it your personal decision not to testify?
>
> [Appellant]: Yes, sir. It was.
>
> MJ: And that will, of course not be held against you in any way by me.
>
> [Appellant]: Yes, sir.

The military judge then discussed logistics and timing of the next session with counsel.

**2. Law**

We review claims of ineffective assistance of counsel de novo. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (citation omitted). Appellate courts

give great deference to trial defense counsel's judgments and presume "counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Morgan*, 37 M.J. 407, 409 (C.M.A. 1993) (*citing Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

Ineffective assistance of counsel claims are analyzed under the test set out by the United States Supreme Court in *Strickland* and we consider "(1) whether counsel's performance fell below an objective standard of reasonableness, and (2) if so, whether, but for the deficiency, the result would have been different." *United States v. Gutierrez*, 66 M.J. 329, 331 (C.A.A.F. 2008) (citations omitted). An appellant has the burden to demonstrate "both deficient performance and prejudice." *Id*. (citation omitted).

In conducting an analysis of an ineffective assistance of counsel claim, courts begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). "[T]he burden rests on the accused to demonstrate a constitutional violation." *Id.* An accused overcomes the presumption of competence only when he shows there were "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[7] *Strickland*, 466 U.S. at 687.

This court does "not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine[s] 'whether counsel made an objectively reasonable choice in strategy' from the available alternatives." *Akbar*, 74 M.J. at 379 (quoting *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001)). For this reason, defense counsel receive wide latitude in making tactical decisions. *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (*citing Strickland*, 466 U.S. at 689). This also applies to trial defense counsel's strategic decisions. *Morgan*, 37 M.J. at 410. "[S]trategic choices made by trial defense counsel are virtually unchallengeable after thorough investigation of the law and the facts relevant to the plausible options." *Akbar*, 74 M.J. at 371 (internal quotation marks and citation omitted). Moreover, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citation omitted).

In making this determination, courts must be "highly deferential" to trial defense counsel and make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

In determining whether to grant a post-trial hearing to resolve a factual matter pursuant to Article 66(f)(3), UCMJ, 10 U.S.C. § 866(f)(3) and *United*

---

[7] U.S. CONST. amend. VI.

*States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967), we are guided by the standard enunciated in *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). Courts of Criminal Appeals do not "decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *Ginn*, 47 M.J. at 243. Instead, we employ the principles for determining whether a *DuBay* hearing is appropriate. *United States v. Sales*, 56 M.J. 255, 258 (C.A.A.F. 2002) (citing *Ginn*, 47 M.J. at 248).

### 3. Analysis

As a preliminary matter, we find that a post-trial evidentiary hearing is not required in this case. Here, Appellant and trial defense counsel all assert that there were practice sessions with Appellant on his potential testimony. The relevant facts are not in dispute, so we can proceed to decide the legal issue on the basis of those uncontroverted facts. *See Ginn*, 47 M.J. at 248.

Having made the determination that we can resolve the legal issue without further fact-finding, we then begin with the presumption that Appellant's counsel were competent. *Cronic*, 466 U.S. at 658. Appellant, without legal training or experience, personally opines that these practice sessions were deficient. Seeing Appellant's performance in these sessions informed his trial defense counsel on Appellant's strengths and weaknesses in his potential testimony. Based on that, Appellant was advised that he should not testify. Before trial started, Appellant apparently decided to follow that advice as he signed a memorandum indicating that decision. Further, on the record upon questioning by the military judge, Appellant affirmed that decision was in fact his.

Now, for the first time, Appellant raises a concern to this court asserting that he really wanted to testify but he did not feel prepared. These assertions do not overcome the presumption of counsel's competence as Appellant has failed to show there were "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Counsel did attempt to prepare him to testify in more than one session. When his personal deficiencies became apparent, they advised him not to testify. He agreed with that advice both in writing and on the record. His post-trial assertions to the contrary notwithstanding, Appellant's trial defense counsel were not ineffective.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of the Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court